## KLUMB v. ROACH et al.

### No. 8494.

Circuit Court of Appeals, Seventh Circuit.

Oct. 26, 1945.

Edwin B. H. Tower, Jr., of Milwaukee, Wis., for appellant.

Ira Milton Jones, of Milwaukee, Wis., for appellee.

Before SPARKS, MAJOR, and KERNER, Circuit Judges.

MAJOR, Circuit Judge.

This action was brought under § 4915 of the Revised Statutes, 35 U.S.C.A. § 63, by the plaintiff Klumb, the unsuccessful party in a Patent Office interference, to ajudicate the question of priority between interfering applications for Letters Patent filed by the plaintiff and the defendant Roach. The issues before the District Court related to the question of priority of invention. Such issues were found in favor of the plaintiff and judgment entered accordingly.

Upon appeal to this court, defendants (appellants) on February 5, 1944 moved that the judgment entered by the District Court be reversed and the suit dismissed for want of jurisdiction by reason of the failure of plaintiff to file the complaint and

prosecute the suit against all the adverse and indispensable parties known to the plaintiff within the statutory period prescribed by the section upon which the action was predicated. This court entered an order denying such motion, without prejudice, however, to the right of defendants to renew the same upon a hearing on the merits. This has been done, and it is urgently insisted that the motion should be allowed.

A troublesome and difficult question is thereby presented which must first be disposed of. To do so requires a consideration of § 4915, which determines the jurisdiction of a District Court in a suit of the instant character. The section, so far as here material, provides:

"Whenever a patent on application is refused by the Board of Appeals or whenever any applicant is dissatisfied with the decision of the board of interference examiners, the applicant, unless appeal has been taken to the United States Court of Customs and Patent Appeals, and such appeal is pending or has been decided, in which case no action may be brought under this section, may have remedy by bill in equity, if filed within six months after such refusal or decision; and the court having cognizance thereof, on notice to adverse parties and other due proceedings had, may adjudge that such applicant is entitled, according to law, to receive a patent for his invention, as specified in his claim or for any part thereof, as the facts in the case may appear."

The pertinent requirement of this section is that an interference suit shall be filed "within six months" after the final decision in the Patent Office "on notice to adverse parties and other due proceedings." The final decision in the Patent Office awarding priority of invention to Roach was entered March 25, 1941, and the complaint in the instant action was filed April 4, 1941. The complaint is barren of any allegation as to adverse parties. The sole allegation as to Roach who is named as a defendant is that he was a party to the interference proceeding before the Patent Office. There is an allegation that the complaint is filed in accordance with § 4915. The defendant Tower as attorney for Roach filed an answer to the complaint on behalf of his client. Such answer makes no specific attack upon the complaint but does contain the allegation that it was not filed in accordance with the provisions of § 4915.

With the record thus made, the trial commenced December 3, 1942, and on April 10, 1943, the court rendered its opinion. On June 5, 1943, a motion was filed by plaintiff to reopen the case and to make Tower a party-defendant, which motion, over the objection of Tower, was allowed June 16, 1943. Thereupon, a supplemental complaint was filed which was answered by the defendants.

On June 4, 1936, by a recorded written assignment, a one-half interest in and to the Roach application in interference and any patent issued thereon was assigned to Tower, who has since owned such interest in and to said application and any patent issued thereon. Plaintiff concedes that he at the time the suit was commenced had knowledge of this assignment and that Tower by reason thereof was the owner of a one-half interest. As stated, Tower was not made a party until after the suit was tried and decided, which was long subsequent to the six months' period contained in § 4915.

Defendants contend that Tower was an adverse and indispensable party within the meaning of § 4915 and that the failure to make him a party within the designated time deprived the court of jurisdiction. Plaintiff rather feebly opposes the contention that Tower was an adverse and indispensable party but relies more strongly upon his contention that this being an equitable suit, a court should ignore the provisions of the statute so as to prevent a plain miscarriage of justice. This so-called equitable theory of the plaintiff, together with some further facts upon which it is predicated, will be referred to later.

In Nachod & United States Signal Co., Inc., et al. v. Automatic Signal Corporation et al., 2 Cir., 105 F.2d 981, the sole question was whether a licensee of an assignee was an indispensable party under § 4915. The court held in the affirmative and sustained an order of the District Court dismissing the suit for failure to make such licensee a party thereto. The court thus held, in face of the fact that the licensee was originally a party but succeeded in having the cause dismissed as to it on the ground that it was not an inhabitant of the district. In other words, the licensee was dismissed from the suit for the latter reason and the action was then dismissed on the motion of other parties-defendants because of the absence of the licensee, an indispensable party. It is interesting to note

that one Judge dissented from the court's decision that a licensee was an indispensable party, but even the dissent recognizes (105 F.2d at page 984), "The present owners of the conflicting patent, whether original applicants or later assignees, are manifestly indispensable defendants."

In Robinson et al. v. Wayne et al., 78 U.S. App.D.C. 15, 136 F.2d 767, it was held that an assignee was an indispensable party. Concerning the holding in the Nachod case, the court stated, 78 U.S.App.D.C. at page 16, 136 F.2d at page 768:

"The Court of Appeals for the Second Circuit has decided the question favorably to appellants' contention, in the case of Nachod & United States Signal Co. v. Automatic Signal Corporation. But the trial judge, in the present case, decided in favor of the appellees, basing his decision expressly upon the dissenting opinion in the Nachod case. In our view, the position taken in the majority opinion in that case was correct; and we rest our decision, in part, upon its reasoning."

In United States v. Washington Institute of Technology, Inc., 3 Cir., 138 F.2d 25, an action under § 4915 was dismissed for failure to make proper party-defendants. It appears that one of the joint owners of an invention assigned his interest, and in connection therewith had an agreement with his assignee by which the assignor was to receive certain benefits accruing from his assignee's use of the invention. The court, in holding that such assignor was an indispensable party, cited with approval the Nachod case. The opinion does not disclose whether plaintiff had knowledge of the assignor's interest.*

The recent case of Solomon v. Schlicker, D.C., 58 F.Supp. 444, was also an action based on § 4915. A motion was made to dismiss on the ground that because of the absence of an indispensable party the court was without jurisdiction. The party in the interference proceeding had assigned his interest to a corporation and the latter as assignee was not made a party. The court in sustaining the motion to dismiss held that it was an indispensable party. Plaintiff contended that the failure to make the corporation a party was through inadvertence. The court pointed out that the assignment was on record in the Patent Office and that

the burden was on the plaintiff to bring in all adverse parties. The court refused to follow the so-called equitable doctrine of the Parker case (next referred to), and in so doing stated, 58 F.Supp. at page 445:

"Consequently, we have here in this suit a situation where, with full prior knowledge and ample time in which to bring in an indispensable party, plaintiff has failed to avail itself thereof and the hardship of a dismissal, if any there be, after what has previously taken place, is one that should have been foreseen and must be borne by plaintiff."

■ Plaintiff does not seriously contend, and in view of the authorities could not well do so, but that Tower under § 4915 was an indispensable party. He attempts, however, to meet the contention by arguing that the special circumstances of the case make the non-joinder of Tower of no consequence. In support of this argument, he relies upon a single case, Parker Rust-Proof Co. et al. v. Western Union Telegraph Co. et al., 2 Cir., 105 F.2d 976. This case was decided by the same court which decided the Nachod case, supra, and only a few days prior thereto. The Parker case, like the other cases to which we have referred, was a suit under § 4915. One Curtin, a party in the interference proceeding, had assigned his interest to another party. Such being the case, the bill alleged that Curtin was not a necessary party. Certain other defendants answered, however, alleging that Curtin had an interest by reason of unrecorded documents that made him an indispensable party. The Court of Appeals reversed the decree of the District Court dismissing the bill. The court held that Curtin was an indispensable party within the meaning of the statutory provision but that plaintiff was not bound by an unrecorded title of which he had no actual knowledge. In reversing the decree, the court stated, 105 F.2d at page 980:

"While no authority has been found dealing with facts at all similar, the general principle has long been recognized that, as the object of the rule respecting indispensable parties is to accomplish justice between all the parties in interest, courts of equity will not suffer it to be so applied as to defeat the very purposes of justice. See Story, Equity Pleadings, 10th ed., § 77."

---

* The opinion of the District Court in this case, 47 F.Supp. 384, 386, states: "These papers were recorded in the Patent Office. Hence, plaintiff had ample opportunity to know of the existence of the March 1, 1935, agreement and of Kear's rights thereunder."

Briefly, the facts upon which the court invoked this so-called equitable doctrine were that plaintiff had no knowledge of Curtin's unrecorded interest and that the defendants obtained an extension of time to answer the complaint, which extended beyond the six months' period during which the suit could be brought and the adverse parties notified. When the answer was filed, subsequent to the expiration of the six months' period, it was disclosed for the first time that Curtin was an adverse party. It is at once apparent that the situation upon which the court invoked this equitable doctrine was far different from the instant case where the plaintiff, at the time the suit was filed and long prior thereto, had knowledge of Tower's assigned and recorded half interest. The same court, in the Nachod case, supra, decided a few days subsequent to its decision in the Parker case, in distinguishing the latter stated, 105 F.2d at page 982:

"The conclusion that the presence of the exclusive licensee was not necessary was reached because he knew of the pendency of the suit against the defendant from which he held his license, knew of the plaintiff's ignorance of his interests, and also knew that the defendants, one of them the company of which he was president, instead of promptly filing their answer and setting up the defense that the licensee was an indispensable party to the suit, were obtaining an extension of time to answer and suppressing that special defense until it was too late for the plaintiff to bring suit in the District of Columbia and to obtain jurisdiction over him there by virtue of Title 35 U.S.C.A. § 72a."

The court on the same page points out that the plaintiff in the Nachod case had knowledge of the adverse interest of the licensee, just as plaintiff in the instant case had knowledge of the adverse interest of Tower, and that the equitable doctrine invoked in the Parker case was without application. It will thus be seen that the Parker case, so strongly relied upon by plaintiff, furnishes his position no support.

At this point we desire to observe that we have serious doubt as to whether the court in the Parker case was justified in basing its decision upon the so-called equitable doctrine. The court concedes that there is no authority dealing with similar facts. It must be remembered that this is not an ordinary equitable action but is predicated solely upon a statutory provision which confers jurisdiction upon the court and fixes the rights of the parties. In order for plaintiff to bring himself within the terms of § 4915 and before the court can adjudicate the rights of the parties, certain things must exist: (1) Plaintiff must have elected to proceed in a District Court rather than by appeal to the United States Court of Customs and Patent Appeals; (2) his complaint must be filed within six months after the decision of the Patent Office; and (3) notice must be given to adverse parties and other due proceedings had. It is our view that these requirements are jurisdictional and the complaint by appropriate allegations must show that the requirements are met; otherwise, the court is without jurisdiction. In Robinson et al. v. Wayne, 78 U.S.App.D.C. 15, 136 F.2d 767, 768, wherein the court was considering a similar jurisdictional provision, it stated:

"Obviously, the purpose of the statute is to make jurisdiction depend upon the situation which is revealed by the complaint."

As heretofore stated, the complaint is silent as to any interest owned by Tower, although the plaintiff admittedly was cognizant of the fact that he was by assignment the owner of a one-half interest and that such assignment was duly recorded in the Patent Office.

There are cases which hold that the absence of an indispensable party is not jurisdictional but merely goes to the power of the court to proceed. See State of Washington v. United States et al., 9 Cir., 87 F.2d 421, and cases therein cited. None of such cases, however, as far as we are aware, is predicated upon a jurisdictional statute which expressly requires the presence of indispensable parties. This distinction, so we think, is illustrated by the recent case of United States v. Hellard, 322 U.S. 363, 64 S.Ct. 985, 88 L.Ed. 1326. This was an equitable action, a suit in partition, in the state court of Oklahoma. It concerned land in which certain Indian tribes were interested. Jurisdiction was conferred upon the state court by federal statute which made no mention as to who should be made parties. The question before the Supreme Court was whether the United States Government was an indispensable party. In holding that it was, the court stated 322 U.S. at page 365, 64 S.Ct. at page 987, 88 L.Ed. 1326:

"But a grant of jurisdiction to a particular court without more does not de-

termine what parties are indispensable to the proceedings in question."

Again, 322 U.S. on page 368, 64 S.Ct. at page 988, 88 L.Ed. 1326, the court stated:

"But, as we have said, the Act in question purports to be no more than a jurisdictional statute. It fails to say that the United States is not a necessary party * * *."

Thus, the court in reversing the decree held that the absence of an indispensable party made the court powerless to proceed, rather than that the court was without jurisdiction. As we understand, however, this was because the statute which conferred jurisdiction was silent as to parties. In contrast, the instant case is based on a jurisdictional provision which requires that adverse parties be named.

Perhaps we should further follow plaintiff's argument in his attempt to convince that the equitable doctrine of the Parker case should be followed. The District Court's opinion was rendered April 10, 1943. It appears that almost immediately thereafter the defendant Tower requested the Patent Office to issue the patent forthwith and disregard his previous request made at the time he paid the final fee to withhold the issuance of the patent for three months. Thereupon, the United States Patent Office on May 11, 1943 issued Patent No. 2,318,832 to the defendant Roach, with a one-half interest therein to defendant Tower. It is contended that this action on the part of Tower, after the announcement of the District Court's decision adverse to Roach, evidences a wilful intention to contravene and vitiate the court's decision and that it was highly inequitable. We are of the view that this contention is not tenable. In the first place, the patent did not issue until thirty days after the court's opinion. If knowledge by the Patent Office that the court had rendered an opinion adverse to Roach would have prevented the issuance of the patent, we see no reason why plaintiff did not have ample time to cause such notice to be given. We doubt, however, if such knowledge on the part of the Patent Office would have precluded it from issuing the patent.

■ Section 4885, Title 35 U.S.C.A. § 41, provides that the final fee should be paid within six months after the time the application is allowed and that "Every patent shall issue within a period of three months from the date of the payment of the final fee * * *." It is also provided if the final fee is not paid within a period of six months the patent shall be withheld. The section contains a proviso, "That the Commissioner of Patents may in his discretion receive the final fee if paid within one year after the six months' period for payment has passed and the patent shall issue." Evidently the proviso has no bearing in the instant matter. The Roach application was allowed August 24, 1942, and the final fee was paid by Roach, as he had a right to do, on February 23, 1943, within the six months' period. The suit had not come to trial at the time the final fee was paid. Under the provision just referred to, it appears that the Patent Office had no discretion but to issue the patent within three months subsequent to February 23, 1943, which period would have expired on May 23, 1943. As noted, it was actually issued twelve days before the expiration of this period. Even though plaintiff or the court had been advised concerning Tower's request that the patent issue, we are unable to discern how the Patent Office could have been precluded from issuing the patent. In United States Gypsum Co., et al. v. Masonite Corporation et al., D.C., 21 F.Supp. 551, it is held that a court is without jurisdiction to restrain the Commissioner of patents from issuing a patent and is powerless to restrain a party from paying the final fee. The court, 21 F.Supp. at page 552, said:

"If the Mason patent is allowed, the payment of the final fee is a legal right with which this court cannot interfere. Upon the payment of the final fee, the Commissioner is bound by statute to issue the patent."

We are of the view that there was nothing inequitable in the conduct of Tower in this respect. In fact, we think his action was justified in order to protect his legal rights as well as those of his client.

■ A more serious matter concerning Tower's alleged inequitable conduct, which also bears upon the matter of waiver hereinafter discussed, arises from the fact that he was the attorney for Roach during all the litigation, including the interference proceeding before the Patent Office and the trial before the District Court, and at no time did he advise the court that he was the owner by assignment of a one-half interest in his client's invention. The record leads us to

believe, however, that there was no deliberate intent on his part to withhold this information. We say this for the reason that early in the trial the proceeding in the Patent Office, by stipulation between the parties, was introduced in evidence and in this proceeding Tower's interest in the invention was disclosed. True, Tower did not specifically call the situation to the attention of the court. Certainly he did not deceive the plaintiff for, as already pointed out, he had knowledge of Tower's interest in the invention at the time the suit was commenced. If Tower is subject to criticism for not specifically calling the situation to the attention of the court, what can be said of plaintiff's counsel for failure to do so? He certainly owed no less duty to the court than Tower. Moreover, as the attorney for plaintiff, the burden was his to disclose by his pleading all adverse parties and to make certain that they were notified.

This brings us to another and closely related contention of plaintiff, that is, that Tower by his conduct waived his right to question the court's jurisdiction or the right of the court to proceed in the suit and adjudicate the rights of the parties. We think it is plain that the conduct of Tower prior to April 10, 1943 (date of the court's opinion) did not constitute a waiver even though that doctrine be applicable in a case of the instant nature. Certainly the mere fact that Tower appeared as attorney for Roach and participated in the trial could not constitute a waiver of a burden which rested upon the plaintiff, that is, to demonstrate by his pleading who the adverse parties were and to see that they were notified in the manner provided by law. In connection with plaintiff's contention with reference to waiver, however, there are other facts and circumstances which developed subsequent to the date of the court's opinion. On June 5, 1943, plaintiff, after learning that a patent had issued to Roach and Tower, as heretofore related, entered a motion to reopen the case for the purpose of making Tower a defendant so that injunctive relief could be had against both parties. In this motion for the first time was it alleged by plaintiff that Tower was the owner by assignment of a one-half interest. This motion was allowed by an order of June 16, 1943. By this order the cause was reopened, Tower was made a party and the plaintiff was granted leave to file a supplemental complaint.

Such complaint was filed on June 23, 1943. It is pertinent to note that this supplemental complaint was not for the purpose of making Tower a party-defendant in compliance with § 4915 but to give the court jurisdiction to issue an injunction against Tower as well as his client Roach. Its allegations were directed solely at the issuance of the patent to Roach and Tower and the circumstances which resulted in such issuance. The defendants, on June 30, 1943, answered this supplemental complaint and sought to justify their action concerning the issuance of the patent. The answer denied that the court had jurisdiction to forestall the issuance of the patent or to enter any judgment declaring such patent invalid. While Tower in his answer challenged the jurisdiction of the court to declare the patent invalid, no ground was stated for such challenge. In his answer to the supplemental complaint, Tower alleged, as he had on behalf of his client in his answer to the original complaint, that the plaintiff had not proceeded in accordance with § 4915. On June 30, 1943, Tower as the new party-defendant moved for leave to answer the original complaint (a copy of the proposed answer was attached to the motion), and to introduce evidence upon the defenses pleaded in said answer. In the proposed answer it was sought to plead the same defenses as those pleaded by Roach to the original complaint. In addition, other defenses were pleaded, particularly that plaintiff's claimed invention was void because of prior art disclosures, a number of which were designated in the answer. The court denied Tower's request to file this answer and to introduce evidence upon the defenses pleaded therein.

On July 13, 1943, the court entered its findings of fact, conclusions of law and final judgment. Nothing was found or concluded concerning jurisdiction or any facts to show compliance with § 4915 upon which jurisdiction might be predicated. It was merely found that the cause of action arose under § 4915.

Plaintiff emphasizes a colloquy which took place between the court and counsel on July 13, 1943, when Tower argued his right to offer proof in support of his proposed answer to the original complaint. Tower called his interest in the invention to the attention of the court and pointed out that such interest was disclosed by the file wrapper introduced in the trial against Roach. Then follows:

"The Court: Did you call it to the court's attention?

"Mr. Tower: I didn't have the time. That wasn't the point of this case. I wasn't bringing the suit. The other side was bringing the suit and it was up to them to plead the parties they want to make to the suit. You had jurisdiction of one party. You didn't have to have me here to determine the issue involved on the 4915. The fact is: I didn't have to appear at all."

It is apparent that this concession on the part of Tower was an erroneous legal conclusion. If, as we think and as the authorities hold, Tower was an indispensable party, it certainly follows that the failure of the complaint to so allege deprived the court of the power to proceed to trial. More than that, we are of the view that the court was without jurisdiction to do so. If we are correct in either of these views, it follows that any judgment rendered upon such hearing and as a result of the court's opinion of April 10, 1943 was a nullity. Just how this fatal defect could have been cured by making Tower a defendant to the supplemental complaint which was a new cause of action as to him, long after the expiration of the six months' period for bringing such suit, we are unable to discern. Moreover, as pointed out, neither the court nor the parties regarded this as the purpose of the supplemental complaint.

It is difficult to understand the failure of Tower to raise the jurisdictional question in the beginning. It perhaps is due to his mistaken conception as to the law as is evidenced by his statement in court heretofore quoted, that the court had jurisdiction to proceed upon a complaint which was silent as to adverse parties, and where it was known by both the parties that an indispensable party had not been brought into the case. On the other hand, it is just as difficult to understand plaintiff's position. He also proceeded upon a mistaken theory as to the law, and persists in such mistaken theory as is plainly evidenced from the concluding statement in his brief on the matter of waiver:

"No need existed to bring Tower into the case as a party defendant until he effected the issuance of patent No. 2,318,832 to Roach and himself. It then became important for the first time that the decrees of the court be specifically directed to Tower personally."

Plaintiff's mistaken view is further emphasized by the fact that his supplemental complaint merely amends the title of the action by making Tower a party thereto. Even if the complaint was subject to amendment at that late date, which we doubt, in order to comply with § 4915, no effort was made to do so. As already pointed out, the supplemental complaint, consistent with plaintiff's erroneous theory (heretofore quoted), is directed solely at a situation which developed subsequent to trial and the court's opinion. We do not think that the answer of Tower to such supplemental complaint constituted a general appearance or a waiver of the provision which required plaintiff to designate him originally as an adverse party. Moreover, Tower was denied the right after he had been made a party to answer the original complaint and consequently was deprived of a trial in a cause to which he was an indispensable party.

In this connection, it is argued that Tower is in no position to complain, inasmuch as he could have made on behalf of his client every defense which he could have made on his own behalf. Whether this be true or not, it is a novel theory to excuse compliance with § 4915, and we think the contention is beside the point.

From what we have said, it follows that the judgment must be reversed without any consideration of the appeal on its merits, and this irrespective of any hardship which such a result may impose upon the plaintiff. As was said in the Nachod case, supra, 105 F.2d 981, 982:

"A hardship may arise in a case where a plaintiff suing under Section 4915 does not know of the existence of an exclusive license and therefore makes only the inventor a party-defendant for, as a result, his bill may be dismissed after it is too late to bring suit in the District of Columbia."

Again, in United States v. Washington Institute of Technology, Inc., supra, 138 F.2d 25, 26, the court, in discussing the plaintiff's predicament, stated:

"And the jurisdictional dilemma plaintiff says it was in, which hinged upon a determination of whether Kear was an indispensable party, is a hazard which confronts many litigants."

In conclusion, it perhaps is not inappropriate to make a further observation.

Our holding that the court was without jurisdiction because of plaintiff's failure to comply with § 4915 requires that the complaint be dismissed. If, however, it be held that plaintiff's failure to comply with this section merely goes to the power of the court to proceed, the same result would be reached for the reason that the six months' period provided by the section for bringing the action has expired and it is now too late for plaintiff to comply with such section.

The judgment appealed from is reversed, with directions that it be vacated and that the complaint be dismissed.