## 64158. UNITED STATES FIDELITY & GUARANTY COMPANY v. GILLIS et al.

POPE, Judge.

Appellee Patricia Fountain filed an action against appellees Jimmy Butler, individually and d/b/a Butler Signs, and Kenton Gillis for the wrongful death of her husband, Lamar Fountain. Butler's insurance carrier, appellant United States Fidelity & Guaranty Company, answered and filed the instant action for declaratory judgment on a policy issued to Butler. The trial court initially denied the motions for summary judgment which had been filed by all parties in the action. However, after reconsideration at the request of the parties, summary judgment was granted to Butler, Gillis, and Fountain.

The facts upon which the declaratory judgment action is based are undisputed. On March 21, 1980 Lamar Fountain, an employee of Braddy Oil Company of Vidalia, Georgia, went to Stuckey in Wheeler County to assist Kenton Gillis (an employee of Butler Signs) in dismantling a Union 76 sign owned by Braddy Oil Company. Braddy had hired Butler to move the sign from Stuckey to Reidsville, Georgia. The sign was composed of a metal pole approximately twenty (20) feet long with a Union 76 logo mounted on top. The pole was attached to a concrete foundation with bolts embedded to

matched holes on the bottom of a metal plate on a pole.

Gillis had come to Stuckey in a 1974 GMC truck owned by Butler with a boom attached which would extend out approximately sixty-five (65) feet in length which in turn had a ladder mounted on top and a cable running on the inside of the boom. This structure enabled the operator to climb out to the end of the boom, attach a cable to an object, return to the controls, tighten the cable, and raise, lower or move the object within the boom's operating radius.

Butler purchased the truck with the boom attached to it and it was considered to be one complete unit. The unit was used by Butler for the maintenance, erection and moving of signs and for some small steel erection jobs. The truck was not used for any purpose apart from the operation of the boom and ladder. In operating the boom and ladder the operator stands on top of the platform on which the crane is mounted. There is no seat and the operator stands directly behind the crane with the controls necessary for operation on his left. Outriggers are then extended to provide stability any time the boom is being operated other than straight ahead. The outriggers were extended at the time of the accident.

Gillis, who was operating the boom and ladder at the time of the accident, testified in deposition as to the steps he followed in removing the sign. First, he climbed up the boom and ladder and attached a small cable to the top of the sign. The boom had a cable with a hook attached which extended from the end of the boom. The hook would be caught by the cable attached to the top of the sign and then used to lift the sign. However, Gillis could not attach the hook to the cable on the top of the sign while he was on the end of the boom and had to climb back down and manipulate the boom itself to attach the hook to the cable on top of the sign. Once this was accomplished, tension was put on the boom's cable to hold the sign so that it would not fall over when removed from the base. Next, the nuts were removed from the bolts which held the pole to its base. An electrical wire running inside the pole was cut so as not to interfere with lifting the sign and pole off the base. After this, Gillis tried to lift the pole and sign off the base by wenching in the cable, but the pole was apparently caught in a bind on one of the bolts remaining in the base. Gillis and Fountain tried to free the pole by beating on the bolts in the base but this was not successful. Then Gillis decided to lift the sign by lifting the boom itself rather than just wenching in the cable. When this was attempted, the pole was lifted free of the base. As this was done, the boom or sign came into close proximity or actual physical contact with electrical wires resulting in the passing of electricity through the boom, down the sign, and electrocuting Fountain.

United States Fidelity & Guaranty Company contends that the

vehicle to which the boom was attached was "mobile equipment" as defined in the policy so as to come within an exclusion of the policy. Part I, Section H, 1-5 of the policy defines "mobile equipment" as follows:

"H. 'Mobile Equipment' means any of the following type land vehicles:

(1) Specialized equipment such as bulldozers, power shovels, rollers, graders or scrapers, farm machinery, cranes, street sweepers, or other cleaners, diggers, fork lifts, pumps, generators, air compressors, drills, other similar equipment.

(2) Vehicles designed for use principally off public roads.

(3) Vehicles maintained solely to provide mobility for such specialized equipment when permanently attached.

(4) Vehicles not required to be licensed.

(5) Autos maintained for use solely on your premises or that part of roads or other premises that adjoin your premises."

There is an endorsement in the policy that provides as follows:

"Changes in Policy — Handling of property.

LIABILITY INSURANCE is changed as follows:

A. Exclusion relating to loading or unloading of property does not apply. The following two exclusions apply instead:

This insurance does not apply to: bodily injury or property damage resulting from the handling of property: (a) before it is moved from the place where it is accepted by the insured for movement into or onto the covered auto, or (b) after it is moved from the covered auto to the place where it is finally delivered by the insured.

Bodily injury or property damage resulting from the movement of property by a mechanical device (other than a hand truck) not attached to the covered auto."

The "Business Auto Policy" also reflects that the business of Jimmy Butler is that of a "sign business owner" and that the GMC truck in question was listed as a covered auto on the face of the policy. The issue presented is whether the truck was excluded from coverage under the "mobile equipment" provision by the use of the truck at the time of the accident.

The policy of liability insurance issued by appellant to Butler provides: "We will pay all sums the insured legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto." While appellant concedes that the truck was listed on the policy as a covered auto and, under other circumstances involving transportation of the boom and ladder would be covered by the policy, appellant argues that at the

time of the accident the truck was not a covered auto as defined in the policy but was "mobile equipment" and, therefore, was excluded from liability coverage. In essence, appellant contends that the truck with boom and ladder attached changes its character from a covered auto to "mobile equipment" depending upon how it is used at any particular time.

A policy of insurance is a contract. As such, if the language used in the contract is plain and capable of only one reasonable interpretation, it is to be accorded its plain and literal meaning. *Wolverine Ins. Co. v. Jack Jordan, Inc.,* 213 Ga. 299, 302 (99 SE2d 95) (1957). However, if the policy contains provisions susceptible of more than one reasonable interpretation, it is uncertain of meaning or expression and, thus, ambiguous. See *Alley v. Great American Ins. Co.,* 160 Ga. App. 597, 599 (287 SE2d 613) (1981); *Tarbutton v. Duggan,* 45 Ga. App. 31 (5) (163 SE 298) (1931). "Contracts, even when ambiguous, are to be construed by the court and no jury question is presented unless after application of applicable rules of construction an ambiguity remains." *American Cas. Co. v. Crain-Daly Volkswagen, Inc.,* 129 Ga. App. 576, 579 (200 SE2d 281) (1973). This principle applies equally to insurance policies.

Appellant seeks to exclude the truck from coverage by claiming that the truck with boom and ladder attached fits the definition of "mobile equipment" provided in Part I, Section H of the policy. Appellant contends that at the time of the accident the truck was stationary and, therefore, was serving only as a platform and stabilizer for operation of the permanently attached extension equipment, urged by appellant to fall within the category of "special equipment" excluded under the same provision. " 'Exceptions, limitations and exclusions to insuring agreements require a narrow construction on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations on that coverage in clear and explicit terms.' " *Alley,* supra at 600. In the case sub judice, even if we find language in one part of the policy which apparently excludes coverage of the truck, our inquiry does not stop at that point. An endorsement to the policy labeled "CHANGES IN POLICY — HANDLING OF PROPERTY" provides for an exclusion from coverage when "bodily injury or property damage [results] *from the movement of property by a mechanical device* (other than a hand truck) *not attached to the covered auto.*" (Emphasis supplied.) From this it is logically apparent that where property is moved by a mechanical device which is attached to the covered auto, coverage exists. Moreover, where, as here, a policy provision is susceptible to two or more constructions, the court will adopt that construction which is most favorable to the

insured. *Empire Fire &c. Ins. Co. v. Jackson,* 159 Ga. App. 585 (284 SE2d 99) (1981).

"The cardinal rule of construction is to ascertain the intention of the parties." Code Ann. § 20-702. The intention of the parties is determined from a consideration of the entire contract. See *Guarantee Trust Life Ins. Co. v. Davis,* 149 Ga. App. 826, 828 (256 SE2d 76), revd. on other grounds, 244 Ga. 541 (261 SE2d 336) (1979). Viewing the policy as a whole, there is a conflict between the exclusion provision for "mobile equipment" and the endorsement. "It is well settled that the courts of Georgia, if there is any ambiguity in an insurance policy, will construe the contract most favorably to the insured." *Wolverine,* supra at 302.

The face of the policy itself supports the construction in favor of coverage based upon the intention of the parties. The policy reflects that the truck is a covered auto under the terms of the "Business Auto Policy"; in fact, it is the only vehicle scheduled for coverage on the policy. The occupation of the insured is listed as "sign business owner." The truck with boom and ladder permanently attached was purchased by the insured as one unit and remained such single unit through the time of the issuance of the policy and the accident. Contrary to appellant's contention that the truck would be insured while transporting the "special equipment," a close reading of the exclusion provision shows the opposite. The provision excludes vehicles maintained solely for transporting "special equipment," a definition which accurately describes Butler's truck. Applied literally, the exclusion provision would preclude coverage of the truck under any and all circumstances, either while moving or stationary. Where the truck is listed as the only covered auto on a policy paid for by the insured, it is logically inconsistent to argue that the parties intended that no liability insurance cover the truck. Additionally, we have scoured the policy for clear and unequivocal language showing that the parties intended that the truck would be covered while in transit, yet not while stationary during operation of the boom and ladder; there is no such language. "The policy must be construed so as to provide coverage unless the contrary clearly appears." *Travelers Indem. Co. v. Whalley Constr. Co.,* 160 Ga. App. 438, 441 (287 SE2d 226) (1981).

Appellant cites to cases in which coverage was denied on similar facts. See, e.g., Schmidt v. Luchterhand, 62 Wis.2d 125 (214 NW2d 393) (1974); Smedley v. Milwaukee Auto Ins. Co., 12 Wis.2d 460 (107 NW2d 625) (1961). Notwithstanding appellant's contentions and references to the contrary in foreign jurisdictions, we agree with the trial court that the use to which the truck was being put at the time of the accident was one contemplated by the insurer and

the insured. The trial court was correct in finding coverage and granting appellees' motions for summary judgment.

*Judgment affirmed. Deen, P. J., and Sognier, J., concur.*

DECIDED OCTOBER 20, 1982 —
REHEARING DENIED NOVEMBER 4, 1982 —

*Mallory C. Atkinson, Jr., Eugene S. Hatcher,* for appellant.
*Paul W. Calhoun, Malcolm F. Bryant, Jr., Donald W. Gillis, Hugh B. McNatt,* for appellees.