**GEORGIA–PACIFIC CORPORATION, a Georgia corporation, Plaintiff, Counter–Defendant, Appellee,**

v.

**Kai LIEBERAM, Defendant, Counter–Claimant, Appellant.**

Nos. 90–8834, 91–8116.

United States Court of Appeals, Eleventh Circuit.

March 20, 1992.

John A. Howard, Susan Teale Couvillion, Fortson & White, Atlanta, Ga., Donald R. Andersen, Vero Beach, Fla., for defendant, counter-claimant, appellant.

Sumner C. Rosenberg, Needle & Rosenberg, Atlanta, Ga., for plaintiff, counter-defendant, appellee.

Before EDMONDSON, Circuit Judge, JOHNSON * and PECK **, Senior Circuit Judges.

EDMONDSON, Circuit Judge:

Defendant-appellant Kai Lieberam appeals the district court's summary judgment decisions against him and grant of injunctive relief to plaintiff-appellee Georgia–Pacific Corporation (Georgia–Pacific) in this contract dispute.[1]

Because we have decided the district court erred in granting summary judgment in Georgia–Pacific's favor on the issue of who owned the invention conceived by Lieberam, we vacate that grant of summary judgment and the related summary judgments on Lieberam's conversion and unjust-enrichment claims; and we remand for further proceedings. We affirm the denial of Lieberam's summary judgment motion on the breach-of-contract and misappropriation-of-trade-secrets claims, and we affirm the summary judgment dismissing Lieberam's fraud and rescission claims. We also dissolve the permanent injunction against Lieberam and reinstate the preliminary injunction; and we direct the district court to determine whether, in the light of this opinion, the injunction should remain in force.

## I. FACTS and PROCEDURE

Lieberam was a German-national student who came to the United States in 1985 on a special student visa that allowed him to work on a temporary, six-month basis with

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable John W. Peck, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

1. This case involves two separate appeals: No. 90–8834, which involves Lieberam's appeal of the district court's summary judgment and preliminary injunction decisions; and No. 91–8116, which involves Lieberam's appeal of the district court's permanent injunction grant. These appeals were not consolidated by this court, but were argued together and will be disposed of jointly.

Georgia–Pacific. Before coming, Lieberam received from Georgia–Pacific a "Terms of Employment" document, which stated that "[a]n Employee Confidential Information and Invention Agreement will have to be signed before work begins.... A copy is enclosed but it need not be signed until you arrive here." Lieberam claims that no Invention Agreement was enclosed and that he neither saw nor signed such an agreement in 1985. A signed Invention Agreement seemingly would have transferred to Georgia–Pacific the legal ownership rights for any invention conceived or made by Lieberam during his term of employment at Georgia–Pacific.

Lieberam completed his six-month term and returned to Germany. Upon returning to Germany, however, he applied for and received another assignment at Georgia–Pacific. He came back to the United States in November 1986 and was assigned to Georgia–Pacific Resins Corporation.[2] Lieberam claims that his sole responsibility was to read various instruments and gauges. Georgia–Pacific, however, claims that Lieberam's supervisor, Andrew Gibson, also directed Lieberam to conduct a condenser-improvement study.

During this time, Lieberam originated an improved condenser system, the design of which was drafted in a report entitled "Design of the Condenser–System." Lieberam claims he conceived the invention during his spare time, but Georgia–Pacific claims Lieberam invented the system during regular work hours. Despite Lieberam's claims, he says in his brief that he worked on the project during some regular work hours.

Lieberam's employment and temporary visa expired in September 1987. Because he wanted to stay in the United States, Lieberam tried to convince Georgia–Pacific that his invention was useful. During this period, Georgia–Pacific's legal department discovered that Lieberam had never signed an Invention Agreement.

After reviewing Lieberam's condenser-system report, officials at Georgia–Pacific offered Lieberam permanent employment, which he accepted. On October 2, 1987—after his temporary employment ended but before his permanent employment began—Lieberam signed the Invention Agreement at issue in this case.

Lieberam then returned to Germany because his visa expired. With legal assistance from Georgia–Pacific he obtained a permanent visa and returned here, where he began working for Georgia–Pacific in January 1988. Lieberam's chief duty at Georgia–Pacific was to work with other employees to develop a prototype of the condenser system. During 1988, Georgia–Pacific spent approximately $60,000 trying to develop a prototype of Lieberam's invention.

Lieberam became concerned in mid-1988 when he discovered that Georgia–Pacific considered itself the "owner" of the condenser system. Lieberam stopped working for Georgia–Pacific in the Fall of 1988. He later pursued a patent application for the invention and informed Georgia–Pacific that he claimed ownership of the condenser system. When Georgia–Pacific discovered that Lieberam was seeking a patent, it sued him, relying on the Invention Agreement and the Agreement's alleged retrospective effect to claim that Georgia–Pacific owned the invention, that Lieberam had breached the Invention Agreement, and that Lieberam had misappropriated trade secrets.

Lieberam answered Georgia–Pacific's complaint by stating that he invented the system before signing the Invention Agreement and by raising various affirmative defenses, including fraud in the inducement. Lieberam also counterclaimed, seeking rescission, a declaratory judgment on who owned the invention, and restitution and damages for conversion, unjust enrichment and fraud.

---

**2.** Lieberam argues that his employment during this initial period by Georgia–Pacific subsidiaries somehow affects the outcome of this case. Because the Invention Agreement contained a provision defining Georgia–Pacific as the parent and all its subsidiaries, this argument has no merit.

Both parties moved for summary judgment, and Georgia–Pacific moved to enjoin Lieberam preliminarily from allowing the patent to issue. Following a hearing on the injunction motion, the court enjoined Lieberam from paying the patent fee that would have allowed the patent to issue. Lieberam moved to dissolve the injunction, but his motion was denied. The district court then partially ruled on the summary judgment motions, holding that, because the court concluded the Invention Agreement had retrospective effect, Georgia–Pacific owned the condenser-system invention.

Georgia–Pacific then moved for a permanent injunction, which the court declined to grant before it decided the remaining summary judgment motions. The court, however, preliminarily enjoined Lieberam from further pursuit of a patent in the United States or in foreign countries.

The court later decided the remaining summary judgment issues in favor of Georgia–Pacific. As a result of the court's summary judgment ruling, the only issues remaining in the case were Georgia–Pacific's breach-of-contract and misappropriation-of-trade-secret claims. The court entered final orders on the summary judgments and extended the preliminary injunction.

The district court ultimately granted a permanent injunction, which enjoined Lieberam from (1) proceeding with domestic or foreign prosecution of patent applications for the condenser-system invention and (2) using or disclosing Georgia–Pacific trade secrets. The court also ordered Lieberam to assign the invention and all patent rights to Georgia–Pacific and to provide Georgia–Pacific with all documents pertaining to the invention. Lieberam unsuccessfully moved to stay the permanent injunction; and this appeal followed.

## II. DISCUSSION

### A. Ownership

The district court erred in granting summary judgment in favor of Georgia–Pacific on the ownership issue. When examining summary judgments, our review is plenary. *See, e.g., American & Foreign Ins. v. Co-*

*lonial Mtg. Co.*, 936 F.2d 1162, 1164 (11th Cir.1991). We will affirm grants of summary judgment only if no genuine issues of material fact exist and only if the moving party is entitled to judgment as a matter of law. *Id.* Because the district court erroneously concluded that as a matter of law the Invention Agreement was retrospectively applicable—that is, the Agreement applied to Lieberam's invention, which was conceived before Lieberam signed the Agreement—we vacate the summary judgment.

When examining summary judgments, we apply the same legal standards that controlled the district court, *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir.1985); because the parties consented in the Agreement to be bound by the laws of the State of Georgia, we apply Georgia contract law. Under Georgia law,

[t]here are three steps in the process of contract construction. The trial court must first decide whether the contract language is ambiguous; if it is ambiguous, the trial court must then apply the applicable rules of construction (OCGA § 13–2–2); if after doing so the trial court determines that an ambiguity still remains, the jury must then resolve the ambiguity.

*Copy Systems of Savannah, Inc. v. Page*, 197 Ga.App. 435, 436, 398 S.E.2d 784, 785 (1990) (citations and internal quotations omitted). Whether a contract is ambiguous is a question of law for the courts to decide. *Id.*

The district court erred in applying the second step of the three-step process. Although the court correctly determined that the Invention Agreement, on its face, was ambiguous on whether the parties meant for the Agreement to have retrospective or prospective effect, the court erred in concluding that the applicable rules of construction resolved the ambiguity and gave the contract retrospective effect. The court erred by focusing only on one phrase—"during my employment"—and by failing to apply all relevant rules of construction.

■ Before looking at the Invention Agreement, which we have provided in the Appendix to this case, it is important to note that "[t]he cardinal rule of [contract] construction is to ascertain the intention of the parties." Ga.Code Ann. § 13–2–3; *see also Hunsinger v. Lockheed Corp.*, 192 Ga.App. 781, 783, 386 S.E.2d 537, 539 (1989). If contract language is clear and unambiguous, we look only to that language to ascertain the parties' intention. *Hunsinger*, 192 Ga.App. at 783, 386 S.E.2d at 539. And if the contract language is "plain, unambiguous and capable of only one reasonable interpretation," construction of the contract is neither required nor permitted. *Id.* If, however, the contract "contains provisions susceptible of more than one reasonable interpretation, it is uncertain of meaning or expression and, thus, ambiguous." *United States Fidelity & Guaranty Co. v. Gillis*, 164 Ga.App. 278, 281, 296 S.E.2d 253, 255 (1982) (citations omitted). After applying the rules of construction to the Invention Agreement, we conclude that it remains ambiguous.

■ After noting that the phrase "during my employment" in the Invention Agreement was ambiguous, *Georgia–Pacific Corp. v. Lieberam*, No. 1:89–CV–0801–JOF, slip op. at 12 (N.D.Ga. May 29, 1990), and that "[i]t would be reasonable for [Lieberam] to conclude [the Invention Agreement's] terms were only prospective", *id.* slip op. at 13, the district court focused on the word "during" to conclude that the Invention Agreement applied to Lieberam's earlier period of employment. Although this interpretation of the Agreement is reasonable, we conclude that, under the circumstances, it is not the only reasonable interpretation of the Agreement.[3]

We agree with the district court that the contract, as written, is ambiguous and that Lieberam could reasonably have concluded its terms had only prospective effect. We disagree, however, with the court's conclusion that the dictionary definition of the word "during" resolves the ambiguity.

Two rules of contract construction seem to guide our interpretation of the Invention Agreement. First, "[i]t is well established [in Georgia] that any ambiguity in a contract is to be construed against the party who drafted it." *Crook v. West*, 196 Ga. App. 4, 4–5, 395 S.E.2d 260, 261 (1990); *see also* Ga.Code Ann. § 13–2–2(5) ("If the construction is doubtful, that which goes most strongly against the party executing the instrument … is generally to be preferred."). Second, "[w]ords [used in a contract] generally bear their usual and common signification." Ga.Code Ann. § 13–2–2(1). Looking at the Invention Agreement in the light of these two interpretative rules shows us that the Agreement could reasonably be construed to have only prospective effect.

The district court noted correctly that the word "during" contemplates action "throughout the continuance or course of" the term of Lieberam's employment. *Lieberam*, slip op. at 13 (quoting *Webster's Third New International Dictionary* 703 (1981)). The court erred, however, in discounting the remaining Agreement language. When construing contract language, we must "look to the agreement as a whole." *Johnson v. Raatz*, 200 Ga.App. 289, 292, 407 S.E.2d 489, 491 (1991); *cf.* Ga.Code Ann. § 13–2–2(4) ("whole contract should be looked to in arriving at the construction of any part"). Looking at the whole Invention Agreement, we conclude that it could be construed reasonably to have only prospective effect.

Although "during" contemplates a continuance or course of employment, nothing in the word's definition necessarily and un-

3. The district court also accepted Georgia–Pacific's reliance on *Harsco Corp. v. Zlotnicki*, 779 F.2d 906 (3rd Cir.1985), to support retrospective application. Apart from the fact that *Zlotnicki* did not involve Georgia law and involved a different agreement, *Zlotnicki* can be distinguished from this case on the facts: the inventor in *Zlotnicki* had never left the employment of Harsco and was not a temporary employee when he designed his invention; and more important, when the inventor in *Zlotnicki* signed the agreement he was fully aware that his employer wanted him to sign to transfer the rights to his invention. *Id.* at 908. *Zlotnicki*, therefore, does not fit this case.

ambiguously includes retrospective effect. And because we construe the Invention Agreement against the drafting party, we cannot say that the only reasonable interpretation of "during" would give the Agreement retrospective effect.

The Agreement contains language that might show only prospective effect. Paragraphs 1, 2, 3 and 4 of the Invention Agreement use the auxiliary verb "will." The district court found that the Agreement's use of "will" showed conditional quality rather than future tense. While this conclusion may be correct, it might just as easily be incorrect. Because the word "will" can reasonably be used to show "simple futurity," *American Heritage Dictionary* 1383 (2d ed. 1985), Lieberam could have signed the Agreement intending that it have only prospective effect.

More important, though, Paragraph 4 of the Agreement, which effects the transfer of inventions to Georgia–Pacific, uses the phrase "which I may conceive or make." "May" appears to refer to a possibility: to something that might happen as opposed to something that has already occurred. *See id.* at 774. So, this phrase, reasonably interpreted, might show only prospective effect. Had the Agreement's drafter, Georgia–Pacific, wanted the Agreement unambiguously to have retrospective effect, it could easily have changed this phrase or added more language to assure retrospective effect: for example, "which I have conceived or made or which I may conceive or make." [4]

After giving the words of the whole Agreement their common meaning and after construing the Agreement against the party who drafted it, we conclude that, on the question of effect, the Agreement has more than one reasonable interpretation. This is not to say that, as a matter of law, the Invention Agreement has only prospective effect; it is merely to say that, after applying the section 13–2–2 rules of construction, the Agreement remains ambiguous.[5]

### B. Conversion and Unjust Enrichment

The district court erred in granting summary judgment on the conversion and unjust enrichment issues because it based the grant on its earlier summary judgment on ownership. The court reasoned that, because Georgia–Pacific owned the condenser-system invention, Georgia–Pacific could not have been unjustly enriched and could not have converted Lieberam's invention. Because the original ownership summary judgment should not have been granted, the summary judgment on unjust enrichment and conversion must also be vacated.

### C. Breach of Contract and Misappropriation

■ The district court properly denied Lieberam's motion for summary judgment on the breach-of-contract and misappropriation claims. Paragraph Two of the Invention Agreement states in pertinent part:

> During my employment ... and thereafter, I will not, directly or indirectly, use for myself or for others [any Georgia–Pacific trade secrets] ..., whether or not used, invented, developed, acquired, discovered, or investigated by me while in the employ of Georgia–Pacific.

Because the condenser-system prototype was at least physically developed (although not necessarily "made," *see supra* note 4) at Georgia–Pacific's expense and with

---

**4.** The district court concluded from the record before it that the invention was not "made" after the Agreement was signed. *Georgia–Pacific Corp. v. Lieberam*, No. 1:89–CV–0801–JOF, slip op. at 10 (N.D.Ga. May 29, 1990). We note that "make," as used in the Invention Agreement, looks ambiguous, although we agree it means something other than "conceive." Especially given this ambiguity, we cannot say (as Georgia–Pacific has urged) that as a matter of law the invention was "made" after the Agreement was signed.

**5.** Because extrinsic evidence may be examined to establish the parties' intent when signing a contract that has been determined to be ambiguous on its face, *see, e.g., Gans v. Georgia Fed'l Sav. & Loan Ass'n*, 179 Ga.App. 660, 662, 347 S.E.2d 615, 618 (1986), the circumstances surrounding the signing of the Invention Agreement might play a crucial role in the eventual outcome of this case.

Georgia–Pacific's facilities, Georgia–Pacific might have a cause of action for breach and for misappropriation because Lieberam distributed copies of the invention to non-Georgia-Pacific recipients. Lieberam's argument that the invention was conceived before signing the Invention Agreement does not overcome that, after signing it, the condenser system effectively could have become a joint project. Also, an issue of material fact exists concerning whether Lieberam may have breached Paragraph Three of the Invention Agreement by retaining Georgia–Pacific's internal documents about the condenser system. Because Lieberam is unentitled to judgment as a matter of law and because genuine issues of material fact exist, we affirm the district court's denial of summary judgment to Lieberam.

### D. Fraud and Rescission

The district court properly granted summary judgment in Georgia–Pacific's favor on Lieberam's fraud and rescission claims. Lieberam claims he was fraudulently induced to sign the Invention Agreement because Gibson, Lieberam's supervisor, said Lieberam had to sign the Agreement if he wanted Georgia–Pacific to employ him and because, at the time of signing the Invention Agreement, nobody mentioned the condenser-system invention or the alleged retrospective effect of the Agreement. As a matter of Georgia law, though, Lieberam's arguments have no merit.

In Georgia, the elements of fraud are (1) a false representation, (2) scienter, (3) an intention to induce, (4) justifiable reliance by the alleged victim, and (5) damage to the victim. *See Allen v. Sanders*, 176 Ga.App. 647, 648, 337 S.E.2d 428, 429 (1985). Lieberam claims that, although Gibson said Lieberam needed to sign the Agreement before he could be employed by Georgia–Pacific, Gibson allegedly wanted Lieberam to sign so that Georgia–Pacific could appropriate Lieberam's invention. Lieberam, however, was supposed to have already signed an Invention Agreement—a fact he knew since 1985. And Gibson's

statement to Lieberam seems, from the record before us, to have been true; if Lieberam wanted to work for Georgia–Pacific, he had to sign the Agreement. Because Georgia–Pacific made no false representations, Lieberam cannot sustain his fraud claim.

Lieberam's other basis for fraud—Georgia–Pacific's failure to mention the condenser-system invention or the possible retrospective effect of the Agreement—also fails to support his claim. Lieberam's alleged lack of full understanding cannot support a fraud claim in Georgia. "One having the capacity and opportunity to read a written contract and who signs it, not under any emergency, or whose signature is not obtained by trick or artifice of the other party, cannot afterward set up fraud in the procurement of his signature...." *Stephens v. Citizens & Southern Nat'l Bank*, 170 Ga.App. 793, 794, 318 S.E.2d 216, 218 (1984). Although the Agreement may not have specifically mentioned Lieberam's invention, the Agreement obviously exists to transfer a broad set of property rights: *all* inventions that Georgia–Pacific employees may conceive or make. If Lieberam had a question about whether his invention would be covered or whether the Agreement had retrospective effect, he should have declined to sign the document. Because Lieberam's fraud claim fails, his rescission claim based on fraud also fails.

We also agree with the district court that Lieberam's rescission claim based on mistake must fail. Rescission can only be based on a mutual mistake of fact or law. Ga.Code Ann. § 13–5–4. Here, Lieberam alleges no genuine mutual mistake, but instead claims that he did not think that his invention was covered by the Invention Agreement. "Absent special circumstances, the court cannot correct for the mistake or ignorance of one party when he had the responsibility, and opportunity, to protect himself." *Smith v. Seaboard Coast Line R.R. Co.*, 639 F.2d 1235, 1241 (5th Cir. Unit B 1981).[6] Mistakes of opin-

---

**6.** The Eleventh Circuit adopted as precedent decisions of the former Fifth Circuit Unit B rendered after September 30, 1981. *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir.1982).

ion or judgment do not authorize judicial interference. *Hargrove v. Bledsoe,* 78 Ga. App. 107, 111, 50 S.E.2d 223, 225 (1948).

### E. Injunction

Because we are vacating the district court's summary judgment in Georgia–Pacific's favor, we must also dissolve the permanent injunction entered against Lieberam. We reinstate the preliminary injunction temporarily preventing Lieberam from paying the patent fee that would allow the patent to issue in his name, but we direct the district court to hold another hearing to determine whether the preliminary injunction is proper in light of this appellate decision.

■ Although the issuance of the permanent injunction would normally make moot Lieberam's appeal of the preliminary injunction, *see Cone Corp. v. Hillsborough County,* 908 F.2d 908, 912 n. 5 (11th Cir. 1990), our decision to reinstate the preliminary injunction and to remand for a rehearing of the injunction issue warrants some discussion of Lieberam's argument, which we consider meritless, that the district court had no jurisdiction to enjoin him from paying the patent fees. Lieberam's chief support for this contention is a 1937 district court case from Delaware. *See U.S. Gypsum v. Masonite Corp.,* 21 F.Supp. 551 (D.Del.1937). Lieberam claims *U.S. Gypsum* stands for the proposition that a federal court has no jurisdiction to enjoin a party from paying a patent fee. We disagree. In *U.S. Gypsum,* the court held that, where the Patent Office had already resolved the issue of who was entitled to preference in the issuance of a patent, the party who lost the patent-preference hearing could not accomplish indirectly what it failed to accomplish directly; that is, stopping the other party from getting the patent. *Id.* at 552. The court, in its discretion, refused to grant the injunction against payment of patent fees. *Id.*

Lieberam also seeks support from *Klumb v. Roach,* 151 F.2d 374 (7th Cir. 1945). This case fails to support Lieberam's jurisdiction argument because *Klumb*

incorrectly cites *U.S. Gypsum* for the proposition that a court is "powerless to restrain a party from paying the final legal fee." *Id.* at 378. Lieberam cites as well *Sernaker v. Mossinghoff,* 581 F.Supp. 1548 (E.D.Pa.1984), for the same jurisdiction argument. *Sernaker,* however, does not hold that a court has no jurisdiction to enjoin the payment of patent fees. It states instead that "[i]n the absence of very compelling reasons it would be a dangerous precedent to enjoin the grant of a patent...." *Id.* at 1550. Here, where the final issuance of the patent would give Lieberam all rights conferred by a patent—rights Lieberam may have contracted away—some reasons exist for the district court to have enjoined him from paying the patent fees.

Not only do the cases cited by Lieberam fail to support the legal proposition that a district court has no jurisdiction to issue an injunction, but also the cases are factually distinct because in each instance the issue in dispute was a preference hearing or other administrative dispute before either the court or the patent office. *See, e.g., Klumb v. Roach,* 151 F.2d 374 (7th Cir. 1945) (dispute over which party had priority between interfering applications to patent office); *Sernaker v. Mossinghoff,* 581 F.Supp. 1548 (E.D.Pa.1984) (dispute over whether patent commissioner abused discretion by denying public-use proceeding); *Godtfredsen v. Banner,* 503 F.Supp. 642 (D.D.C.1980) (dispute over whether indispensable party was joined in interference proceeding); *U.S. Gypsum Co. v. Masonite Corp.,* 21 F.Supp. 551 (D.Del.1937) (plaintiff tried to enjoin opponent after plaintiff lost at preference hearing). In no case did there exist a contract like the Invention Agreement that would have, exclusive of the patent proceedings, changed the legal status of the parties. Because we conclude that, on the facts of this case, the district court had jurisdiction to enjoin Lieberam from paying the patent fees, and because the completion of the patent process might vest in Lieberam rights that he may have legally transferred to Georgia–Pacific, we reinstate the preliminary injunction against Lieberam.

The preliminary injunction, though, will be reinstated pending the district court's own redetermination of the question whether Georgia–Pacific remains entitled to the injunction. To be entitled to injunctive relief, Georgia–Pacific must show (1) a substantial likelihood that it will prevail on the merits, (2) that it would suffer irreparable injury in the absence of the injunction, (3) that the threatened injury to Georgia–Pacific outweighs an injuries to Lieberam caused by the injunction, and (4) that public policy would not be harmed by the injunction. *Cate v. Oldham*, 707 F.2d 1176, 1185 (11th Cir.1983). In the light of today's decision, the district court should, after reviewing all relevant evidence, reweigh the injunction factors to see if injunctive relief remains appropriate.

Two injunction factors raise some cause for concern. First, the likelihood of Georgia–Pacific's success on the merits has, in our view, been weakened by this decision. Second, the injury to Lieberam caused by a lengthy injunction might outweigh the threatened injury to Georgia–Pacific. If the delay caused by the injunction were, in fact, to prevent Lieberam from ever finishing the patent-application process or were,

in fact, to destroy or greatly reduce the value of the rights under the patent even if Lieberam succeeds on the merits of this case, the injury to Lieberam caused by the injunction could well outweigh the injury to Georgia–Pacific caused by the issuance of the patent to Lieberam.[7] We stress that we come to no conclusion on this issue; we merely point out some areas that the district court should reexamine upon presentation of further evidence and in the light of this opinion.

## III. CONCLUSION

We VACATE the district court's grants of summary judgment on the issues of ownership, conversion and unjust enrichment, and we REMAND for further proceedings. We AFFIRM the denial of summary judgment on the issues of breach of contract and misappropriation. We AFFIRM the grant of summary judgment on the issues of fraud and rescission. And we DISSOLVE the permanent injunction, REINSTATE the temporary injunction, and REMAND the injunction issue to the district court for further proceedings.

---

**7.** We suggest that any possible injury to Georgia–Pacific might be prevented, for example, by a court order allowing Lieberam to obtain a patent but enjoining Lieberam from exercising his rights under the patent until this case reaches final disposition or by a final order in this case ordering Lieberam to transfer all rights and profits (past as well as future) from the patent to Georgia–Pacific should it prevail, or both. The district court has the equitable powers to fashion the appropriate remedy that will protect both parties.

## APPENDIX

**GeorgiaPacific** ⚘

**employee confidential**
**information and invention agreement**

NOTE: EXCEPT FOR SIGNATURES, PLEASE PRINT OR TYPE.

Name of Employee: _Kai Lieberam_

Home Address: _1307 Countryside PL_
_Smyrna, Ga, 30080_

G-P Location: _____ Division No.: _____

For and in consideration of my employment by Georgia-Pacific Corporation ("Georgia-Pacific"), a Georgia corporation, or if now employed, my continued employment by Georgia-Pacific, I hereby agree as follows:

1. I will serve Georgia-Pacific faithfully and to the best of my ability.

2. During my employment with Georgia-Pacific and thereafter, I will not, directly or indirectly, use for myself or for others or disclose to any other party any secret, proprietary, confidential, or trade secret information, including, but not limited to, knowledge or data relating to any product, apparatus, process, formula, manufacturing, purchasing, accounting, engineering, or marketing method at any time used, developed, acquired, discovered, or investigated by Georgia-Pacific, whether or not used, invented, developed, acquired, discovered, or investigated by me while in the employ of Georgia-Pacific.

3. At the termination of my employment with Georgia-Pacific or at any other time Georgia-Pacific may request, I will promptly deliver to Georgia-Pacific, without retaining any copies, all memoranda, notes, records, plats, sketches, plans, correspondence, or other documents of whatsoever nature in my possession or control relating to the information described in Paragraph 2.

4. Any invention, improvement, or discovery, whether or not patentable, that relates to past or present business of Georgia-Pacific (including research and evaluation), which I may conceive or make, either alone or in conjunction with others, during my employment by Georgia-Pacific or within six months immediately thereafter, shall be the sole and exclusive property of Georgia-Pacific each such invention, improvement, or discovery and will, whenever requested to do so by Georgia-Pacific, promptly execute any and all applications, assignments, and other instruments which Georgia-Pacific shall deem necessary in order to apply for and obtain letters patent of the United States and/or foreign countries for said invention, improvement, or discovery, and in order to assign and convey to Georgia-Pacific or its order the sole and exclusive right, title, and interest in and to said invention, improvement, or discovery.

5. I hereby acknowledge that I have read and understand the following notice:

   The Employee is hereby notified that no assignment to Georgia-Pacific is required concerning any invention for which no equipment, supplies, facility, or trade secret information of Georgia-Pacific was used and which was developed entirely on the Employee's own time and (1) which does not relate (a) directly to the business of Georgia-Pacific or (b) to Georgia-Pacific's actual or demonstrably anticipated research or development, or (2) which does not result from any work performed by the Employee for Georgia-Pacific.

   I further acknowledge my duty to disclose to Georgia-Pacific in confidence all inventions developed or being developed by me, either solely or jointly with others, during the term of my employment, whether or not such inventions are assignable under this Paragraph 5.

6. This Agreement shall be construed under the laws of the State of Georgia and shall be binding on and enforceable against my heirs and legal representatives and the assignees of any invention, improvement, or discovery conceived or made by me. If any provision of this Agreement is held invalid in any respect, it shall not affect the validity of any other provision of this Agreement. If any provision of this Agreement is held to be unreasonable as to time, scope, or otherwise, it shall be construed by limiting and reducing it so as to be enforceable under then applicable law. Nothing herein shall obligate me or Georgia-Pacific to continue my employment for any specified period of time, and my employment may be terminated, with or without cause, at any time at my option or at the option of Georgia-Pacific. As used herein "Georgia-Pacific" shall include Georgia-Pacific Corporation or any entity controlled by or under common control with Georgia-Pacific Corporation.

7. This Agreement supersedes any and all prior agreements between me and Georgia-Pacific concerning confidential information and inventions.

_Kai Lieberam_
Employee

_7th October 1987_
Date

Distribution: White——Law Department——Atlanta
Canary——Employee's Personnel File
Pink——Employee's Copy