28707. MILLER, executrix, v. ADAMS-CATES COMPANY.

DECIDED MARCH 4, 1941. REHEARING DENIED APRIL 5, 1941.

Herbert J. Haas, Bertram S. Boley, Joseph F. Haas, for plaintiff.

Sumter M. Kelley, Spalding, Sibley, Troutman & Brock, for defendant.

BROYLES, C. J. A. S. Miller as executrix of the will of Irving Miller, deceased (hereinafter being referred to as Miller), brought suit against Adams-Cates Company (hereinafter called the defendant) to recover $793.74 alleged to be due Miller as commissions for his services in aiding the defendant in the consummation of a lease contract. The petition sets forth the following allegations: The parties to said contract were Sol I. Yudelson as lessor and Moe Ronis as lessee. The contract covered premises at 59 Whitehall Street, Atlanta, Georgia. It began on August 15, 1936, and was to terminate on August 14, 1946, and provided for an agreed monthly rental of $750 from August 15, 1936, to August 14, 1941, and thereafter for $833.33 per month until the expiration of the lease. A copy of the lease was attached to the petition as an exhibit. In the contract the lessor covenanted and agreed to pay monthly to the defendant a commission of five per cent. on the gross rentals to arise under the contract. For his services in aiding the defendant to consummate the lease, the defendant agreed to pay Miller twenty-five per cent. of said five per cent., and confirmed the agreement in a letter to Miller, dated July 21, 1936, and attached to the petition as an exhibit. From August 15,

1936, through January 15, 1940, the defendant paid monthly to Miller or his representatives the said twenty-five per cent. In January, 1940, the defendant, without notice to Miller and without his consent, illegally and in violation of its agreement with him, agreed with the lessor and the lessee that the lease contract should be voluntarily canceled, and it was canceled, and after said cancellation the defendant notified Miller that he would not be paid any other commissions. Miller having died, his executrix brought suit to recover the commissions to which he was entitled under the lease contract and his agreement with the defendant. The letter addressed to Miller and signed by the defendant company, above referred to, is as follows: "Atlanta, Georgia, July 21, 1936. Mr. Irving Miller, Louisville, Ky. Dear Sir: Enclosed herewith you will find certified copy of lease between Sol I. Yudelson and Moe Ronis, covering the premises at 59 Whitehall Street, Atlanta. It is agreed that you are to receive one fourth of the commissions paid under this lease. I have agreed with Mr. Yudelson that the procurement fee of the first month's rent shall be paid $150 out of the first month's rent and $100 out of the next six months' rent, making a total of $750, or [for?] the first month's rent. This will be sent to you monthly as this rent is collected." The defendant's answer to the suit was substantially based on the contention that after "diligent inquiry and investigation of the facts surrounding the cancellation of said lease," the defendant "determined that the lease could not continue, and all of its acts and doings in the premises were in good faith, and as it has collected no commissions under said lease over and above those in which plaintiff, or his representatives, has participated, it is under no duty, legally or morally, to pay plaintiff any further sum whatever." The general and special demurrers to the answer were overruled, and to that ruling exception was taken. The verdict and judgment were in favor of the defendant. A motion for new trial was denied, and that judgment was assigned as error.

Counsel for the defendant contend, that the agreement between Miller and the defendant was, in effect, that Miller should receive twenty-five per cent. of the commissions arising from the rentals actually paid to the lessor by the lessee; that when the lessee became unable to pay the rentals and discontinued such payments, the defendant was relieved from paying any further com-

missions to Miller; and that this is shown by the statements in the defendant's letter to Miller. The answer of the defendant appears to be based solely on this contention. We can not agree to this argument. It is well-settled law that neither insolvency nor other inability of the lessee to perform a lease is a defense to an action by a broker for commissions. "If the broker's principal once accepts the purchaser, he waives the right to question his financial ability, so far as the broker's rights to compensation are concerned." *Shaw* v. *Chiles,* 9 *Ga. App.* 460, 463 (71 S. E. 745). In *Baker* v. *Strawder,* 50 *Ga. App.* 388 (178 S. E. 206), the headnotes are as follows: "1. When an agent employed to sell certain timber for the owners at a certain figure procures a purchaser who is accepted by the owners and a contract is entered into between them, the commission for finding such purchaser is earned, although the purchaser later defaults for no reason caused by the agent. 2. A subsequent release of the purchaser by the owners, or an agreed cancellation or rescission of the contract, will not prevent the agent from recovering his commission for having procured the purchaser, when a valid contract has been entered into between the owners and the purchaser. 3. Subject to some limitations affecting the good faith of the agent, or his knowledge of the customer's financial condition, the general rule is that the agent may recover his commission for procuring a purchaser with whom a valid contract is made, although the purchaser later is found to be financially unable to comply with the terms of the contract. 4. An agent will not be prevented from recovering commissions for obtaining a purchaser who is accepted, in furtherance of which a binding contract is made, though the purchaser deliberately refuses to consummate the contract."

The foregoing decisions, although not involving the procurement of a lease contract, are applicable and controlling in this case. And it is well settled that, "A real-estate broker and his subagent stand in practically the same relative position inter se with reference to the right to compensation as do the principal and the broker. The broker who was directly employed is entitled to recover the whole commission from his employer, and the only remedy of the broker who was employed to assist in the sale is against the first broker who is his employer." 12

C. J. S. 175, § 80. In *Bush* v. *Mattox*, 116 *Ga.* 42 (42 S. E. 240), which involved a lease contract, the court made the following ruling: "Where a lessee of convicts, who has a right to sublet them to other persons, employs another to assist him in procuring some one to sublet them, and agrees in writing to pay to the person so employed, for his services, all excess over $14 per month for each convict sublet, and, with the assistance of the intermediary, the original lessee makes a contract subletting the convicts at $16 per month, and subsequently, without the knowledge of the intermediary, releases the sublessee and voluntarily reduces the amount from $16 to $14, the intermediary is entitled to recover [from the original lessee] on his contract." The principle of that ruling is applicable to the instant case. We do not think that the letter from the defendant to Miller could properly be construed as agreeing to pay Miller his promised commissions *only in the event that the lessee paid his rentals.* In the light of all the facts of the case, of the law applicable thereto, and the established rule that ambiguous statements in a writing should be construed most strongly against the writer, the letter should properly be construed as an *unconditional* agreement to pay Miller all of his commissions. The failure of the lessee to pay his rent did not relieve the lessor of his obligation to pay the defendant's commissions; and the defendant, if it had not agreed to the cancellation of the lease contract, could have recovered the full commissions from the lessor, and would have been obligated to pay to Miller his per cent. thereof. Only the defendant could sue the lessor for the commissions; and since it estopped itself, by its conduct in consenting to the cancellation of the contract, from so doing, Miller was damaged in the amount of his unpaid commissions. In our opinion the answer failed to set out any valid defense to the suit, and the court erred in overruling the general demurrer. We think also that the answer was subject to all of the special demurrers, and that they should have been sustained. The error in overruling the demurrers rendered the further proceedings nugatory.

Judgment reversed. MacIntyre, J., concurs.

GARDNER, J., concurring specially. Miller became associated with Adams-Cates Company in procuring a renter for certain store property. The contract between Adams-Cates Company and Mil-

ler provided that Miller was to receive one fourth of the commissions payable to Adams-Cates Company. The lease contract which was perfected between the lessor, Yudelson, and the lessee, Ronis, provided how and when said commissions were to be paid. Miller contracted with Adams-Cates Company, and, as between them, accepted the terms of payment of the commissions as set out in the lease contract. The provisions of the lease as to commissions and as to termination, material to an understanding of the issues involved, were as follows:

"Lessee accepts this lease, and agrees to pay to lessor, through Adams-Cates Company, . . promptly on the first day of each rental month in advance, during the term of this lease, a monthly rental of seven hundred fifty and no/100 dollars ($750) from August 15, 1936, to August 14, 1941; eight hundred thirty-three and 33/100 dollars ($833.33) from August 15, 1941, to August 14, 1946. It is agreed that, upon the failure of the lessee or his assigns (should an assignment hereof be permitted) to pay in full any sum of money which may be due by him hereunder, or to comply with any other of the terms, conditions, or agreements of this indenture, the lessor, acting through himself or his agents or representatives, shall have the right, upon fifteen days notice by registered mail notice and without legal process, to declare this lease to be at an end. Thereupon, the same shall be at an end, except for the purpose of enforcing rights then accrued hereunder. The lessor, or his agents, representatives or assigns, may forthwith enter upon said premises and forcibly or otherwise, remove all persons and things therefrom, and repossess the same, all notice provided by law for the termination of tenancy and all right process hereby waived.

"It is further agreed that in the event (1) the lessee is adjudged to be a bankrupt, or (2) applies for relief under any law of the United States relating to bankruptcy or any amendment thereto, or any relief under any State laws relating to bankruptcy or any amendment thereto, or any relief under any State laws relating to insolvency, or (3) obtains under any law of the United States relating to bankruptcy as from time to time amended, or under any State law, whether upon his own application or that of his creditors or other person at interest, any extension of time for the payment of his obligations or any stay of the right to pro-

ceed against the lessee, or obtains any other relief which may be afforded by any law or laws of the kind of character herein referred to, or (4) a receiver, conservator, or other custodian is appointed for him or his property by any court, then, or in either or any such events, the lessor shall have the right to declare this lease at an end, provided this right be exercised within six (6) months after the happening of any such contingency. For the purposes of this paragraph or section of this lease, the assignee of the lessee or any subsequent holder or successor in interest of the lessee at the time in possession (should an assignment or more than one successive assignments of this lease have been permitted in accordance with the terms hereof) is to be regarded as lessee within the meaning and intendment of this paragraph or section, and all and singular the above-mentioned provisions, made in respect of the right to terminate this lease upon the happening of any one of the contingencies above specified, shall obtain in respect of any such assignee, subsequent holder or successor in interest of the lessee; provided, however, that if this lease shall have been assigned or transferred in the manner and under the conditions herein set out and hereby permitted, then the happening of any of the above contingencies, affecting the original lessee or involving the property of such lessee, shall not have the effect of permitting the lessor to declare this lease to be terminated as against the then holder of the same. In the event these premises are subleased, or this contract is assigned under the terms and in the manner herein permitted, such subtenant or assignee shall become liable directly to the lessor hereunder to the same extent as to all things herein mentioned, without relieving any liability of the lessee. The parties hereto agree that the said agents [Adams-Cates Company], their successors, representatives, or assigns, in consideration of the services rendered in procuring this contract and of services to be rendered under the same, shall have, as compensation the first month's rent collected in cash, and for the remaining months, five per centum (5) of the gross rentals to arise thereunder or under any renewal thereof, which is now by the lessor, with the assent of the lessee, conveyed, granted, and assigned to the said agents, their successors, representatives, and assigns. Any person who may acquire an interest in said premises shall take notice hereof and be subject hereto. In the event that lessee shall acquire lessor's title

or interest in said premises, and thereafter the lessor shall fail and refuse to pay said compensation, then the lessee covenants and binds himself to pay the same as and when same would have been due and payable if no such acquisition of said lessor's title or interest had been had by the lessee, lessee hereby waiving demand for the payment of such compensation made upon the lessor and notice of default in making any such payment on the part of the lessor."

Adams-Cates Company, without the consent of Miller and without his knowledge, agreed with the lessor and the lessee that the contract between them be canceled along with the provisions of paying commissions. The cancellation of the contract thus agreed to by Adams-Cates Company and without the knowledge or consent of Miller was not based on any of the provisions set out in the lease contract authorizing a cancellation of it. This is in substance the allegations of the petition, and the answer does not allege any facts to the contrary. If the lease contract was terminated otherwise than according to its own provisions (which those who are concerned would have a right, as between themselves, to do by mutual agreement), to the detriment of one of the parties concerned and interested therein, it would be as to him an illegal termination, and those responsible therefor would be liable for damages. Therefore, under the facts of this case, Adams-Cates Company, having participated without the consent of Miller in the cancellation of the contract, became liable for the illegal termination of the contract, and is responsible to Miller by reason of its own contract with him based upon the terms of the lease contract. This does not announce any new principles of law, but only those which are as old as the law of contracts, and apply to contracts concerning one business as well as to another. To allow an escape from liability by permitting one to allege his own opinion of good faith and business judgment, as a defense for the violation of the plain provisions of a contract, would lead us into a chaotic state so far as the law of contracts is concerned. Counsel for the defendant, either in their brief or under their motion for rehearing, have not cited any authorities which would tend to vary the rules above reiterated, long the principles of contracts, and the cases which they do cite and ask this court to invoke are based upon entirely different states of facts.