A89A1346. HUNSINGER v. LOCKHEED CORPORATION.
(386 SE2d 537)

BIRDSONG, Judge.

This is an appeal of the trial court's order granting appellee/defendant's motion for summary judgment and denying appellant/plaintiff's motion therefor.

Appellant (hereinafter Hunsinger) licensed real estate brokers, procured the Expanded Metal Corporation (hereinafter Expanded Metal) as a tenant for appellee (hereinafter Lockheed). On August 10, 1976, Lockheed and Expanded Metal entered a lease (hereinafter lease) for a term of ten years of 67,560 square feet of space in Building L-45. The lease vested Expanded Metal with the right of extending the first ten-year term of the lease for an additional five-year period. The lease also acknowledged that Hunsinger "shall be paid a commission as compensation for procuring this [l]ease" in accordance with the terms of a "Separate Commission Agreement" (hereinafter commission agreement). The term of this lease became effective October 1, 1976.

On the same date, Hunsinger and Lockheed entered into the separate commission agreement that was drafted by Hunsinger. This agreement recognized Hunsinger as having procured Expanded Metal as a tenant for Lockheed, and provided that a certain commission would be paid. Under the terms of the commission agreement, Hunsinger would be paid an amount equal to 1/12th of the annual rental in the fourth year of the lease, and in addition, five percent of all rentals paid by Expanded Metal commencing with the second month of the lease.

The commission agreement also pertinently provided, in paragraphs 2 and 5 respectively, that: "2. If the term of this [l]ease is extended, or if new lease is entered into between Landlord and Tenant covering leased premises, or any part thereof, Landlord, in consideration of Agent's having procured Tenant hereunder, agrees to pay

Agent five percent (5%) of all rentals paid to Landlord by Tenant, under such extension or amendment. The leased premises shall be the entire L-45 Building"; and, "5. Voluntary cancellation of this [l]ease shall not nullify Agent's right to collect the commission due for the remaining term of this [l]ease." The commission agreement expressly defined the term "lease" as pertaining to the lease dated August 10, 1976, entered into between Lockheed and Expanded Metal.

On August 1, 1978, Lockheed and Expanded Metal executed Amendment No. 1 to the lease, effective October 1, 1978, to provide for the rental of an additional 12,463 square feet of space in Building L-45 at an increased rental rate. This amendment also expressly provided that the term of the original lease was not extended thereby. This agreement was accomplished with some participation by Hunsinger. On June 1, 1980, Lockheed and Expanded Metal executed another lease agreement (hereinafter second lease), which provided for the lease of the entire L-45 Building for a 25-year term. It is contested whether Hunsinger participated in this particular lease. This lease contained a clause which terminated and superseded all prior lease agreements pertaining to the premises.

In conjunction with the execution of the second lease document, Hunsinger attempted to negotiate the execution of a new commission agreement with Lockheed. Lockheed declined to do so apparently on the basis that a new commission agreement was unnecessary in view of the scope of paragraph 2 of the commission agreement.

In June 1984, Lockheed and Expanded Metal entered into an agreement to voluntarily cancel the second lease and for Expanded Metal to vacate Building L-45 by July 31, 1985. Hunsinger was not a participant in the forging of this agreement. Subsequent to the cancellation of the second lease, Lockheed continued to pay Hunsinger certain commission payments. On July 18, 1986, Lockheed tendered a check for $8,968.83 in full satisfaction of its obligations under the commission agreement, but Hunsinger rejected the tender asserting entitlement to its commission throughout the term of the 25-year lease. Thereafter, appellant Hunsinger brought suit against Lockheed for breach of the commission agreement. *Held*:

1. Appellant asserts that the trial court erred in ruling that as a matter of law the commission agreement was clear and unambiguous, and he asserts that cancellation of the lease and termination of the commission agreement would not void Hunsinger's entitlement to his commission payments.

The trial court correctly opined that the construction of a contract is a question of law for the court, OCGA § 13-2-1. After examining the commission agreement on its four corners, we agree with the trial court's conclusion that the agreement is both clear and unambiguous.

OCGA § 13-2-3 provides that "[t]he cardinal rule of [contract] construction is to ascertain the intention of the parties. If that intention is clear and it contravenes no rule of law and sufficient words are used to arrive at the intention, it shall be enforced irrespective of all technical or arbitrary rules of construction." Where the terms of a written contract are clear and unambiguous, the court will look only to the contract to find the intention of the parties. *Health Svc. Centers v. Boddy*, 257 Ga. 378, 380 (359 SE2d 659); *Griffin v. Adams*, 175 Ga. App. 715, 716 (334 SE2d 42). No construction of a contract is required or permitted when the language used by the parties is plain, unambiguous and capable of only one reasonable interpretation. In such a case, the language used is given its literal meaning and common ordinary words are given their usual significance. *Griffin*, supra at 716; accord *Kusuma v. Metametrix*, 191 Ga. App. 255 (2) (381 SE2d 322).

The trial court construed the pertinent provisions of the commission agreement as follows. "Paragraph 5 of the Commission Agreement provides that '[v]oluntary cancellation of this [l]ease shall not nullify Agent's right to collect the commission due for the remaining term of *this [l]ease* [emphasis added].' The term 'this [l]ease' is defined in the Commission Agreement as the [l]ease entered into on August 10, 1976 by Lockheed and Expanded Metal. Paragraph 2 of the Commission Agreement provides that '[i]f the term of *this [l]ease* is extended, or if *new lease* is entered into between Landlord and Tenant . . . Landlord . . . agrees to pay Agent five percent (5%) of all rentals paid to Landlord by Tenant, under such extension or amendment [emphasis added].' This Court finds that Paragraph 5 of the Commission Agreement applies only to a voluntary cancellation of the 1976 [l]ease and not to the cancellation of any subsequent leases entered into by Lockheed and Expanded Metal. If the parties had intended for the provisions of Paragraph 5 to be applied to any subsequent leases entered into between Lockheed and Expanded Metal, language to that effect could have been incorporated into Paragraph 5 as it was in Paragraph 2. Therefore, since Paragraph 5 clearly states on its face that Plaintiff was entitled to commissions only for the ten year period provided for in the August 10, 1976 [l]ease, it is the Order of this Court that Defendant's motion for summary judgment be and is hereby granted."

Examination of the commission agreement in toto reveals that in arriving at the above contract construction, the trial court correctly applied the rule in *Griffin* and gave the language used in the commission agreement its literal meaning, and the common and ordinary words therein contained their usual significance. We find no error in the trial court's construction of this agreement.

*Farris v. Pazol*, 166 Ga. App. 760 (305 SE2d 472); *Hunter v.*

*Benamy Realty Co.*, 115 Ga. App. 829 (156 SE2d 160); and *Miller v. Adams-Cates Co.*, 64 Ga. App. 858 (14 SE2d 220) are distinguishable from this case.

Moreover, assuming arguendo that the commission agreement had contained an ambiguity, we note that it was drafted by appellants. Even where a contract is ambiguous, a jury question is presented only " ' " 'when the application of the rules of construction fails to resolve the ambiguity.' " ' " *Norton v. Hutton*, 172 Ga. App. 836 (324 SE2d 744). It is an established principle of contract construction " '(a) contract will not be construed so as to authorize one of the parties to take advantage of his own wrong.' " *Norton*, supra at 837; *National Enterprises v. Davis*, 140 Ga. App. 488, 489 (231 SE2d 490). The rule of contract construction compatible with this principle is that an ambiguous contract will be construed most strongly against its maker. OCGA § 13-2-2 (5); *Stern's Gallery &c. v. Corporate Property &c.*, 176 Ga. App. 586, 593 (337 SE2d 29); *Norton*, supra at 837; *National Enterprises*, supra at 489. Were we to have occasion to apply this principle and rule, we would resolve the ambiguity in a manner identical in contract construction to that already given the commission agreement by the trial court.

Appellant's above enumerations of error are without merit.

2. Appellant asserts that the trial court erred in granting summary judgment for the appellee as the record shows that appellant was never paid in full even under appellee's interpretation of the commission agreement.

Paragraph 1 of the commission agreement pertinently provides that *"Landlord agrees to pay Agent . . . an amount equal to one twelfth (1/12) the annual rental in the fourth year of the* [l]ease ($87,828.00 [divided by] 12) . . . and in addition thereto, five percent (5%) of all rentals thereafter paid by Tenant commencing with the second month of the [l]ease." Paragraph 2 of the commission agreement provides that "If the term of this [l]ease is extended, or if new lease is entered into . . . *Landlord* . . . agrees to pay Agent five percent (5%) of all rentals *paid to Landlord by Tenant, under such extension or amendment.*" (Emphasis supplied.) Paragraph 5 of the commission agreement provides that "Voluntary cancellation of this Lease shall not nullify Agent's right to collect the commission *due* for the remaining term *of this Lease.*" (Emphasis supplied.) These provisions in pari materia must be construed together. We find that these provisions, in part, clearly agree to the payment of a commission as provided in paragraph 1, above. However, if the original lease is extended or a new lease entered, then the landlord is to pay, for the period as prescribed above, five percent of the rentals *paid* to him by the tenant under this extension or amendment, whether it arises from a modification of the original lease or from the terms of a new lease.

Moreover, these provisions also clearly provided that once the original lease is extended or a new lease entered, the five percent commission is to be based on the modification or new rental rates, if any, without regard to whether it is more or less than the rental rate under the original lease.

At the outset, we note that the parties have made certain assertions of fact concerning the payments made and due that are not supported by evidence of record. Such unsupported assertions cannot be considered in the appellate process. *Behar v. Aero Med Intl.*, 185 Ga. App. 845 (1) (366 SE2d 223).

According to the clear terms of the commission agreement, we find that the following commission payments were due and owing appellant: (a) the sum of $7,319 (1/12th the annual rate of $87,828), and even if the original lease was cancelled before such payment was made, the amount would remain collectible under Paragraph 5 of the commission agreement; (b) the amount of $287.88 per month (five percent of the first year monthly rental rate formula in the original lease) from October 1, 1976 (the date the term of the lease became effective) to September 30, 1977; (c) the amount of $404.99 per month (five percent of the second year monthly rental rate formula in the original lease) from October 1, 1977 to September 30, 1978; (d) the amount of $472.49 per month (five percent of the third year annual rental rate in amendment to the original lease divided by 12) from October 1, 1978 to September 30, 1979; (e) the amount of $433.46 per month (five percent of the fourth year annual rental rate in amendment to the original lease divided by 12) from October 1, 1979 to May 31, 1980; (f) the amount of $656.25 per month (five percent of the first five year monthly rental rate formula in the second lease) from June 1, 1980 (the date the second lease became effective) until May 31, 1985; and (g) the amount of $765.63 (five percent of the second five year monthly rental rate formula in the second lease) from June 1, 1985 to July 31, 1985 (the date the second lease was terminated). It is clear from the plain language of paragraph 2 of the commission agreement that once the second lease was terminated and the tenant ceased to *pay* rent under the terms thereof, landlord was no longer obligated to pay appellant any further commissions based on the rental rates in the *second lease*.

However, in addition to the above payments, appellant is entitled to receive the amount of $365.95 per month (five percent of the fourth through tenth year monthly rental rate formula in the original lease) from August 1, 1985 to the date the original lease would have expired had it not been *terminated* by the express provisions of paragraph 31 of the second lease. The original lease would have expired, pursuant to paragraph 2 thereof, ten years from when the lease term commenced, that is ten years from October 1, 1976. Appellant's entitle-

ment to this amount is based on the fact that although paragraph 1 of the commission agreement also refers to a five percent commission limited to certain rentals *paid* by the tenant, this provision clearly is overridden by the terms of paragraph 5 of the commission agreement. Paragraph 5, as stated in Division 1, pertains to the original lease, including the rental rates thereunder. Paragraph 5, when read in conjunction with paragraphs 1 and 2 unequivocally grants the agent, in the event the original lease is voluntarily cancelled, the right to collect a commission at least equal to five percent of all rentals yet *due* the appellee landlord under the otherwise remaining terms of the original lease. This reading of the clear language of the contract happens to be compatible with the statutory rule that "[t]he construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part." OCGA § 13-2-2 (4).

On March 1, 1983, the tenant Expanded Metal sublet a portion of the premises back to landlord Lockheed in consideration of a substantial reduction in the amount of rental charged for the remainder of the premises. Appellee asserts that this reduction in rentals resulted likewise in a substantial reduction of the amount of commission owed appellant, and thus it has in fact overpaid appellant. Paragraph 2 of the commission agreement sets appellant's commission for any new leases entered between landlord and tenant covering any part of the leased premises, at five percent of all rentals paid to landlord by tenant. It is clear from the unambiguous and common language of this paragraph that the parties did not intend that a "sublease" from tenant back to the landlord would be included in the term "new lease." Thus, we find that paragraph 2 of the original lease does not apply to a sublease. Compare *Health Svc.*, supra, *Griffin*, supra, and OCGA § 13-2-3. Moreover, we find that the tenant Expanded Metal continued to pay landlord Lockheed until termination of the second lease, at least the monthly rental amounts required by the applicable contract rental formulae, albeit that payments were thereafter made partially in cash and partially in the economic value vesting in Lockheed by allowing it to regain control over a portion of its premises. Appellee, having elected in essence to accept a portion of its rental from Expanded Metal in the form of a sublease, cannot now use this election to disenfranchise appellant of entitlement to a full commission.

Accordingly, we find that the trial court did err in granting summary judgment for appellee, because the ultimate cancellation of the lease and termination of the commission agreement would not void Hunsinger's vested entitlement to his commission payment; and, because from the *current* state of the record, a genuine issue of fact remains regarding whether Hunsinger has been *paid* all the commis-

sion fees, as above determined to be due and owing under the terms of the commission agreement. Thus, we will reverse that part of the trial court's order granting summary judgment for appellee.

*Judgment affirmed in part and reversed in part. Deen, P. J., and Benham, J., concur.*

DECIDED SEPTEMBER 8, 1989.

*Schwall, Ruff & Goodman, Emory A. Schwall, Robert S. Wayne,* for appellant.

*Downey, Cleveland & Parker, Lynn A. Downey, Russell B. Davis,* for appellee.