A95A2802. HALBERT v. HALBERT.
(469 SE2d 534)

POPE, Presiding Judge.

The question in this case is whether an ex-wife, under the terms of a qualified domestic relations order ("QDRO"), has the option of continuing to receive alimony beyond her ex-husband's unreduced retirement date, or whether she must instead accept 35 percent of the retirement funds to which the husband would be entitled if he retired. Concluding that the QDRO was ambiguous on this issue, the trial court considered parol evidence and ruled that the ex-wife had the option to choose whether to continue to receive alimony or to collect her portion of the retirement funds. We cannot agree that the QDRO was ambiguous, however, and therefore reverse.

Paragraph 3 of the QDRO provides: "The Wife shall be entitled to 35% of the Husband's interest in the retirement benefits payable under the Plan. Upon the earlier to occur of (i) the Husband's retirement or (ii) the Husband's Unreduced Retirement Date (as such term is defined in the Plan), *the Plan shall pay to the Wife, whether or not the Husband has retired*, an amount equal to 35% of all funds from the Plan to which the Husband is entitled or would be entitled if he retires . . . The Wife shall also be entitled to receive 35% of any early retirement subsidy available to the Husband when the Husband actually retires." (Emphasis supplied.) This language clearly mandates that the ex-wife begin receiving the retirement benefits upon the ex-husband's retirement or unreduced retirement date, whichever occurs earlier. No option is mentioned.

The trial court nonetheless found an ambiguity was created by the following language from paragraph 7 of the QDRO: "The Wife further reserves the right to obtain any benefits that may be available to her under the Plan, subject to any applicable reduction, at any time that the Husband may have had the right to retire from

Lexmark with vested pension benefits under the Plan." But this sentence is taken from the middle of a paragraph about benefits which may become available in the future; the full paragraph states: "The Wife reserves the right to obtain any benefits which may in the future become available to her under the Plan in the event that future federal legislation mandates, or Lexmark elects to permit, such benefits be made available to her (such as, for example, the right to obtain benefits in a lump sum). The Wife further reserves the right to obtain any benefits that may be available to her under the Plan, subject to any applicable reduction, at any time that the Husband may have had the right to retire from Lexmark with vested pension benefits under the Plan. Wife acknowledges that she will no longer be eligible for plan updates once she has begun to receive benefits under the Plan." While paragraph 7 itself is not well written, the only reasonable way to read it is that its provisions refer only to rights or benefits which may become available as the result of a future change in the law or the plan. The trial court's reading of this paragraph strains logic and creates a conflict with paragraph 3 that need not exist. See *Friedman v. Friedman*, 259 Ga. 530, 532 (3) (384 SE2d 641) (1989) (phrases must be read in context with surrounding language, and each provision should be read to harmonize with others if possible).

As the QDRO was not ambiguous and clearly mandated that the ex-wife begin collecting retirement benefits from the time of the ex-husband's unreduced retirement date, the trial court's ruling giving her the option of collecting them or not was error.

*Judgment reversed. McMurray, P. J., Birdsong, P. J., Andrews, Johnson, Blackburn, Smith and Ruffin, JJ., concur. Beasley, C. J., dissents.*

BEASLEY, Chief Judge, dissenting.

I respectfully dissent because the trial court correctly construed the qualified domestic relations order to mean that the wife could choose to begin receiving a portion of the husband's retirement benefits on either his retirement or on his "Unreduced Retirement Date," as that term is defined in the pension plan maintained by the husband's employer.

The entire order relates to the payments to be made to the wife, after divorce, in connection with the pension plan which otherwise would have covered her had the parties remained married. The order determined what her rights would be, authorized the plan administrators to make certain payments to her, and was drawn for the purpose, at least in part, of satisfying § 414 (p) of the Internal Revenue Code. The QDRO was referred to in the settlement agreement which covered all matters related to property, support, and children. As contemplated by the settlement agreement, the QDRO was subsequently

prepared (by the wife's counsel), executed by the parties, and made the order of the court. According to the settlement agreement, the QDRO had to be approved by the husband's employer also, and apparently that was done.

The settlement agreement states that "[t]he Wife shall have vested rights in the Husband's retirement benefits through his employer" which, when received, will be in lieu of alimony provided for elsewhere in the agreement. It also states in this paragraph that she "shall be further entitled to spousal protection on pre or post retirement benefits" in certain amounts. Handwritten into this paragraph is the provision that the Husband is to notify the Wife within five days of his termination of employment and within five days of the date he is to begin receiving retirement benefits.

Paragraph 3 of the QDRO provides that the wife "shall be entitled to" a certain percentage of the husband's interest in retirement benefits upon his retirement or his unreduced retirement date, whichever first occurs. She is also "entitled to receive" a certain percentage of any early retirement subsidy he receives. This section, by its terms, does not require her to take this but rather entitles her to demand it; it is her right, to exercise or not, the only condition being that it will be in lieu of alimony as stated in the settlement agreement. However, according to the settlement agreement, alimony would automatically stop "upon the Husband's retirement," so the only period in which she would have a choice as a practical matter would be from the husband's unreduced retirement date until the date of his actual retirement.

Paragraph 7 of the QDRO expressly reserves certain rights in the wife and provides for extinguishment of another right. Two rights are reserved: (1) the right to obtain additional benefits under the pension plan which might become available due to future federal legislation or employer action; and (2) the right to obtain benefits available to her when the husband has the right to retire with vested benefits. This latter right obviously refers to her benefits as set out in paragraph 3. It expressly provides a choice for her during the period when the husband can retire with benefits but chooses not to do so. During that period she can continue to receive alimony or she can receive benefits under the plan. If this is not the meaning, there was little if any purpose for the sentence. That meaning is to be preferred which will give effect to the contract as a whole. OCGA § 13-2-2 (4).

Reading the two interrelated documents together and the various pertinent provisions so as to be harmonious, as we are bound to do, *Friedman v. Friedman*, 259 Ga. 530, 532 (3) (384 SE2d 641) (1989), the terms of the QDRO are not ambiguous. "No construction of a contract is required or permitted when the language used by the parties is plain, unambiguous and capable of only one reasonable inter-

pretation. In such a case, the language used is given its literal meaning and common ordinary words are given their usual significance." *Hunsinger v. Lockheed Corp.*, 192 Ga. App. 781, 782 (1), 783 (386 SE2d 537) (1989).

Thus I reach the same conclusion as that reached by the trial court, although I do not find, as did the trial court, that the QDRO is ambiguous. Even if it were so, the result would be the same, applying the rules of construction applicable to ambiguous contracts. OCGA § 13-2-2. For one, the contract must be construed against the party who undertook the obligation. OCGA § 13-2-2 (5); *Franklin v. Franklin*, 262 Ga. 218 (416 SE2d 503) (1992). And, as the trial court found upon consideration of extrinsic evidence concerning the parties' intention at the time the documents were executed, *Gans v. Ga. Federal Savings &c. Assn.*, 179 Ga. App. 660 (347 SE2d 615) (1986), the intention of the parties was to allow the wife's right to alimony not to be reduced before the husband actually retired.

"The cardinal rule of construction is to ascertain the intention of the parties." OCGA § 13-2-3; *Darby v. Mathis*, 212 Ga. App. 444 (1) (441 SE2d 905) (1994). In obedience to this rule, the judgment of the trial court should be affirmed.

DECIDED MARCH 12, 1996 — 

*Adele L. Grubbs*, for appellant.
*Richard L. Moore, Rebecca S. Walton-McFalls*, for appellee.