In re the MARRIAGE OF Daniel A. McGINLEY and Cassandra McGinley

Upon the Petition of Daniel A. McGinley, Petitioner–Appellee,

and

Concerning Cassandra McGinley, Respondent–Appellant.

No. 06–0068.

Court of Appeals of Iowa.

Oct. 11, 2006.

Brad McCall of Brierly Charnetski, L.L.P., Grinnell, for appellant.

Lee M. Walker of Walker & Billingsley, Newton, for appellee.

Considered by VOGEL, P.J., and ZIMMER and VAITHESWARAN, JJ.

VOGEL, P.J.

Cassandra McGinley appeals from the district court's entry of declaratory judgment, limiting her entitlement to the early-retirement pension benefits of her former husband, Daniel McGinley. Concluding the declaratory judgment inequitable to Cassandra, contrary to the decretal court's intent and Iowa case law, we reverse and remand.

## I. Background Facts and Proceedings.

Cassandra and Daniel's twenty-two year marriage was dissolved by decree entered in 1996. At the time of the dissolution, Daniel had twenty-one years and five months of credited service as an employee of Maytag Corporation, as well as a vested interest in Maytag's Pension and Disability Plan for Hourly Employees. The decree provided:

> The Court further finds that [Cassandra] shall receive one-half (1/2) of [Daniel's] interest, as of the date of entry of this Decree, in any and all Maytag pension plans in which [Daniel] is a participant.

A Qualified Domestic Relations Order (QDRO) was approved by the dissolution court in December 1996. The QDRO provides in pertinent part:

7. *Assignment of Benefits to Alternate Payee*

... Cassandra McGinley, (the "Alternate Payee") is hereby assigned 50% (fifty percent) of the marital portion of Daniel McGinley's (the "Participant") vested accrued benefit under the Maytag Corporation Employees Retirement Plan (the "Plan").

8. *Determination of Marital Portion of Benefit*

(a) The marital portion of the Participant's accrued benefit under the Plan is an amount equal to the actuarial equivalent of the vested accrued benefit of the Participant under the Plan determined as of the participant's Earliest Retirement Age .... under the Plan (multiplied by the fraction "years of benefit service while married" ÷ "total years of benefit service")

9. *Timing, Form, and Amount of Benefit Payment to Alternate Payee*

The benefits hereby ordered, assigned, and transferred to the Alternate Payee shall commence as of a date selected by Alternate Payee with the approval of the Plan Administrator. Such date shall not be earlier than the date Participant could commence receiving benefits under the Plan disregarding Participant's continuing employment by an employer sponsoring the Plan, but shall not be later than the date the Participant retires.... If the Plan does not then permit a lump sum benefit payment .... the Alternate Payee will be provided the opportunity to elect to receive the actuarial equivalent value of such benefits in any form then available to the Participant (or that would then be available to the Participant had the Participant then separated from service)....

The Participant's Earliest Retirement Age means ...:

(a) the date of which the Participant is entitled to a distribution of his benefits under the Plan....

After an additional eight and one-half years of employment, Daniel opted to take Maytag's early retirement benefit commonly referred to as "30 and out." Pursuant to this option, Maytag set the monthly benefit at $2600.00. This sum was arrived at by first taking Daniel's basic monthly pension benefit of $1095.00 and reducing it to $295.10 because of the early retirement. A "subsidy" of $133.05 was then added, bringing the amount up to $428.15. An "early retirement supplement" set by the Collective Bargaining Agreement (the Agreement) added $2171.85 which brought the total back up to the $2600.00 amount. The subsidy and supplemental payments will end on May 1, 2017, when Daniel will be entitled only to the basic monthly benefit of $1095.00 (with periodic increases under the terms of the pension plan).

Daniel filed a petition for declaratory judgment in April 2005, seeking to restrict Cassandra's entitlement to the additional subsidy ($133.05) and supplement ($2171.85) he would receive under the "30 and out" option. The district court framed the issue as,

[W]hether Cassandra is entitled to 35.5% of the entire benefit available to Daniel which includes his 'early retirement subsidy' and 'early retirement supplement' (the entire $2600.00), or whether Cassandra is entitled to 35.5% of only the amount of Daniel's reduced monthly basic benefit of $295.10 ($428.15—$133.05).

After noting the pertinent language of the QDRO regarding Cassandra's entitlement to one-half the marital portion of benefits, the district court found, "based upon the undisputed fact that Daniel was not eligible for '30 and out' at the time the Decree was granted, that Cassandra is not entitled

to any portion of the supplement which Daniel receives." Cassandra appeals.

## II. Scope of Review.

The district court tried the declaratory judgment petition in equity, and our review is de novo. *Kragnes v. City of Des Moines,* 714 N.W.2d 632, 637 (Iowa 2006).

## III. Early Retirement Benefits.

■ Cassandra contends on appeal that freezing her out of any entitlement to Daniel's early retirement subsidy and supplemental payments is grossly inequitable. Under the district court's ruling, the amount Cassandra would receive is 35.5% of $295.10, or $104.76 per month, leaving Daniel the balance of $2495.24 per month. While Daniel does not dispute these figures, he asserts that Cassandra is not entitled to either the subsidy or supplement as they represent post-dissolution property. He urges us to accept the district court's rationale that because Daniel was not eligible for the "30 and out" at the time of the dissolution decree, that benefit should not be considered a divisible marital asset.

■ Obviously, Daniel did not qualify for early retirement at the time of the dissolution, as he was still fully employed and not yet of retirement age. Nonetheless, he did have over twenty-one years of employment accumulated during the marriage, which together with the post-dissolution years of employment later qualified him for early retirement. To hold that a spouse would only benefit from the "30 and out" option if the employee was eligible for it at the time of the dissolution would essentially allow a fair division of pension benefits only for those who were at retirement age at the time of a dissolution. Such an absurd result cannot stand under an equitable distribution analysis. *See In re Marriage of Kurtt,* 561 N.W.2d 385, 388 (Iowa Ct.App.1997) (noting that the proper standard for division of pensions as marital property is an equitable and just award under the circumstances). *See generally Uptown Food Store, Inc. v. Ginsberg,* 255 Iowa 462, 469, 123 N.W.2d 59, 63 (1963) (noting fairness to the parties, without absurd results, governed an equitable action concerning a restrictive covenant). Moreover, while the focus of the declaratory judgment action was the marital portion of the Plan's benefits, the Plan cannot be read in isolation but rather must be read in conjunction with the QDRO and the 1971 Collective Bargaining Agreement. Under the QDRO, the marital portion of the pension benefits is the amount accrued, "determined as of the participant's Earliest Retirement Age," which is defined in part as, "the earliest date as of which the Participant could begin receiving benefits." Because the Agreement allowed for an early retirement, the date Daniel chose to retire became "the earliest date" under the QDRO and the date from which the marital portion should be valued and apportioned. Clearly, Daniel would not have been able to retire as of this "earliest date" but for the underlying twenty-one plus years of employment contributed during the marriage.

■ Not only do the Plan, the Agreement, and the QDRO dictate this result, but Iowa law requires that in dissolution of marriage proceedings, the assets of parties, including pension benefits, be divided equitably. *In re Marriage of Duggan,* 659 N.W.2d 556, 559 (Iowa 2003). Although valuing and dividing pension benefits can be problematic, we are aided by our case law with a method and formula helpful in resolving these issues. *In re Marriage of Benson,* 545 N.W.2d 252, 255–56 (Iowa 1996). For a defined benefit plan, as is the case here, the spouse is awarded through a QDRO a percentage (frequently fifty per-

cent) of a fraction of the pensioner's benefits based on the duration of the marriage.[1] *In re Marriage of Sullins,* 715 N.W.2d 242, 250 (Iowa 2006) (citing *Benson,* 545 N.W.2d at 255). The fraction represents the portion of the pension attributable to the parties' joint marital efforts. *Id.* However, the *value* of the proportionate share is not set until maturity; that is, "the amount the pensioner actually receives when he or she finally begins to draw benefits .... generally at retirement." *Benson,* 545 N.W.2d at 256.

■ In this case, Daniel set the time to retire and hence fixed the date of maturity. That Daniel was not eligible for early retirement at the time of the decree is immaterial, as the benefits, while vested, had not yet "matured." *Id.* at 255. Iowa law gauges the value of the spouse's share in the pension plan from the time of maturity at actual retirement, rather than freezing the spousal share at the time of dissolution. *Id.* Calculating the shares at the time of maturity effects equity between the parties, as follows:

> [A]fter divorce the value of the non-employee spouse's separate property interest in the pension benefits is "frozen" until the employee spouse retires, at which time that "frozen" value is returned to the non-employee spouse. During the time from divorce to retirement, however, the entire fund—comprised of the employee spouse's separate property interests and the non-employee spouse's separate property interests—continues to establish its earnings profile over time. Since these separate property interests are combined until retirement, the plan administrator can

invest the employee spouse's separate property interest in the fund. This "added" investment value increases the fund's earning power, which in turn is used (and may be necessary) to create the employee's future "defined" benefit. [T]he employee spouse receives at retirement the entire value of the "defined" benefit. From that amount, the non-employee spouse is entitled to one-half of the value of the [marital] interest in the benefit on the date of divorce. The "defined" benefit received by the employee spouse is made possible, however, in part by the use of the non-employee spouse's separate property interest in the fund. The entire amount of earnings attributable to the non-employee spouse's separate property interest remains within the fund, committed to create the "defined" benefit. The non-employee spouse receives only his value as calculated and "frozen" on the date of divorce .... such a rule allows the employee spouse to reap the benefits of the earnings attributable to the non-employee spouse's separate property interest in the fund. The actual earnings attributable to the non-employee spouse's separate property interest cannot be awarded to the non-employee spouse, as a separate value, because they are needed to generate the value of the ultimate "defined" benefit. Yet, it seems inequitable for a divorce court to "freeze" the value of the non-employee's interests in the pension benefits at divorce and prohibit that spouse from realizing any investment income generated by his separate property interest.

Steven R. Brown, *An Interdisciplinary Analysis of the Division of Pension Bene-*

---

**1.** The numerator is the number of years during the marriage the pensioner accrued benefits; the denominator is the total number of years benefits accrued prior to maturity. The fraction is multiplied by fifty percent and then multiplied by the value of the monthly pension benefit. This represents the percentage of the pension attributable to the parties' joint marital efforts.

*fits in Divorce and Post–Judgment Partition Actions: Cures for the Inequities in Berry v. Berry*, 39 Baylor L.Rev. 1131, 1188–89 (1987).

At the time of the declaratory judgment, Daniel had elected to participate in the "30 and out" option, thereby fixing his pension benefits as matured, and presently available. This maturity marks the date for valuing the benefits, from which Maytag would set the amount of the benefits in conjunction with the Agreement. Cassandra, as alternate payee under the QDRO, should have been paid her proportionate share based on Maytag's $2600 per month valuation. Any other resolution would be inequitable to Cassandra and such manipulation of the value as Daniel proposed is not anticipated under the Plan, the decree, or the QDRO. *See In re Marriage of Lehman*, 18 Cal.4th 169, 74 Cal.Rptr.2d 825, 955 P.2d 451, 456 (1998) (holding that a non-employee spouse holds a community [marital] property interest in pension plan early retirement enhancements because, practically by definition, the right to retirement benefits that accrues, at least in part, during marriage before separation underlies any right to an enhancement); *Halbert v. Halbert*, 220 Ga.App. 615, 469 S.E.2d 534, 535 (1996) (noting that QDRO unambiguously gave the non-employee wife a right to receive her portion of the marital share of any early retirement subsidy available to the husband when the husband actually retires); *Layne v. Layne*, 83 Ohio App.3d 559, 615 N.E.2d 332, 336 (1992) (stating that a non-employed former spouse is entitled to the benefit of any increase in the value of his or her unmatured proportionate share after divorce attributable to the continued participation of the other spouse in the retirement plan, including early retirement enhancements, because such increase was expected at the time of investment).

Other jurisdictions have chosen to freeze the non-employee spouse's share at the time of dissolution, or otherwise determined that early retirements are not subject to marital property division. *Cf. In re Marriage of Oddino*, 16 Cal.4th 67, 65 Cal.Rptr.2d 566, 939 P.2d 1266, 1279 (1997) (stating that when the participant has not yet retired, the former spouse's benefit under a QDRO is limited to the actuarial value of normal retirement benefits and any unreduced early retirement benefits are an employer subsidy that, under federal ERISA law, may not be ordered paid under a QDRO while the participant continues to work for the plan sponsor); *Blaine v. Blaine*, 872 So.2d 383, 384–85 (Fla.Dist.Ct.App.2004) (holding that QDRO's providing the former wife with future enhancements that were not part of the marital portion of husband's pension plan, including future improvements, cost of living adjustments, and early retirement subsidies, conflicted with the final judgment that valued the pension at the time of dissolution); *Hodowal v. Hodowal*, 627 N.E.2d 869, 873 (Ind.Ct.App.1994) (holding husband's early retirement subsidy was not marital property as a vested right but an option contingent upon his continued employment and eventual qualification for the subsidy in nine years, based upon value of the pension frozen at the time of dissolution); *Greenwood v. Greenwood*, 746 A.2d 358, 361–62 (Me.2000) (holding that non-employee spouse waived distribution of her husband's early retirement benefits because, although both parties were aware of the enhancements, the additional benefits were not included in calculation of the pension funds at the time of dissolution); *Page v. Page*, 31 A.D.3d 1172, 817 N.Y.S.2d 551, 552 (N.Y.App.Div.2006) (reversing the provisions of the QDRO that deviated from the judgment of divorce and the parties' stipulation with respect to death and survivor benefits, early retire-

ment subsidy benefits and restraints on plaintiff's conduct as a participant in the pension plan).

The better view, which is in accord with our Iowa case law contemplating economic protection of both parties in retirement, is to value the pension upon maturity. *See In re Marriage of McLaughlin,* 526 N.W.2d 342, 344 (Iowa Ct.App.1994) (awarding proportionate shares of a pension if and when payable, while striving to assure similar retirement security for both spouses.) *See also Duggan,* 659 N.W.2d at 561 (holding that post dissolution cost-of-living increases are marital property as they stemmed from employment during the marriage). Moreover, to exclude Cassandra from benefiting from Maytag's "30 and out" plan after a twenty-two year marriage would eviscerate the equity the district court clearly envisioned in the 1996 dissolution decree. *See In re Marriage of Fall,* 593 N.W.2d 164, 167 (Iowa Ct.App. 1999) (considering the pension distribution in overall scheme of equitable division).

We therefore conclude that Cassandra is entitled to her marital portion, as determined under the QDRO, of Daniel's entire monthly benefits payment that includes the early retirement subsidy and supplement. We reverse the declaratory judgment of the district court that Daniel's early retirement benefits are not subject to division under the QDRO and remand for entry of an order consistent with this opinion.

### IV. Attorney's Fees on Appeal.

■ Daniel requests an award of attorney fees on appeal. The general rule,

subject to an exception for circumstances in which a losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, is that a party has no claim for attorney fees in the absence of a statute or contract allowing such an award. *D.M.H. by Hefel v. Thompson,* 577 N.W.2d 643, 648 (Iowa 1998). Daniel has made no claim or showing that either the exception to the general rule applies or that a contractual provision allows an award of attorney fees. Iowa Code chapter 598 (2005) does allow attorney fee awards (1) for prosecuting or defending an action for dissolution of marriage, including temporary support matters (*see* Iowa Code § 598.11), (2) for bringing an action that results in a determination a party is in default or contempt of a decree (*see id.* § 598.24), and (3) to the prevailing party in a proceeding for modification of an order or decree (*see id.* § 598.36). It contains no provision, however, allowing such an award in a post-decree action seeking a declaratory judgment concerning the parties' rights and responsibilities under the decree. We therefore deny Daniel's request for an award of appellate attorney fees, finding it to be without basis in law or fact. Costs on appeal are assessed to Daniel.

### REVERSED AND REMANDED.