## IN THE COURT OF APPEALS OF IOWA

No. 16-2005
Filed November 8, 2017

**IN RE THE MARRIAGE OF LISA A. JACOBS AND SCOTT D. JACOBS**

**Upon the Petition of**
**LISA A. JACOBS,**
  Petitioner-Appellee,

**And Concerning**
**SCOTT D. JACOBS,**
  Respondent-Appellant,

**and**

**NATALIE A. JACOBS,**
  Interested Party-Appellee.
_____

  Appeal from the Iowa District Court for Des Moines County, John G. Linn, Judge.

  Scott Jacobs appeals a district court order retroactively requiring him to contribute to his adult daughter's postsecondary educational expenses and attorney fees. **AFFIRMED IN PART AND REVERSED IN PART.**

  Lisa A. Jacobs, Wever, appellee pro se.

  Timothy B. Liechty of Bell, Ort & Liechty Law Office, New London, for appellant.

  Robert J. Engler of Cambridge Law Firm, P.L.C., Atlantic, for appellee Natalie Jacobs.

  Considered by Vaitheswaran, P.J., and Doyle and Bower, JJ.

**VAITHESWARAN, Presiding Judge.**

Scott Jacobs appeals a district court order retroactively requiring him to contribute to his adult daughter's postsecondary educational expenses and attorney fees.

## I.    *Background Facts and Proceedings*

Scott and Lisa Jacobs married in 1986 and divorced in 1996.   The district court ordered Scott to pay child support and authorized its continuance for postsecondary education beyond the age of eighteen years but not beyond the age of twenty-two.   *See* Iowa Code § 598.1(6) (1996).   The child who is the subject of this appeal was two years old at the time.

Sixteen years later, Scott filed an "application for determination of postsecondary education" for the now-adult child, Natalie.  As a result of Natalie's recent graduation from high school, he sought the termination of his child support obligation, modification of "[a]ny postsecondary support" so that it would be governed by a more recent Code provision, and a determination "that Natalie . . . repudiated [him] and . . . all postsecondary support should be at [his] discretion." *See* Iowa Code § 598.21F(6) (2012) ("A support order, decree, or judgment entered or pending before July 1, 1997, that provides for support of a child for [postsecondary education] expenses may be modified in accordance with this section."); *see also id.* § 598.21F(4) ("A postsecondary education subsidy shall not be awarded if the child has repudiated the parent by publicly disowning the parent, refusing to acknowledge the parent, or by acting in a similar manner."); *In re Marriage of Vaughan*, 812 N.W.2d 688, 693 (Iowa 2012) ("The general assembly excluded postsecondary education support from the definition of

'support' in the Iowa Code and promulgated a new section dealing with what it termed a 'postsecondary education subsidy.' . . . . The 1997 legislation provides the current statutory basis for requiring divorced parents to provide funds for a child's postsecondary education.").

In a 2013 ruling, the district court determined Scott's ongoing child support obligation should be modified to a postsecondary education subsidy. The court further determined Natalie did not repudiate her father and there was "good cause to require a postsecondary education subsidy." While finding a "lack of credible information concerning Natalie's college expenses for the 2013-14 school year," the court "nonetheless conclude[d] a postsecondary education [subsidy] can and should be entered under the circumstances presented." The court found "it fair, reasonable and appropriate for each party to be equally responsible for Natalie's expenses, up to the maximum allowed by law, even though the record does not reveal the actual cost of [her] education" and stated "[t]he amount owed by each parent shall be determined at the end of each semester. . . . after the deductions for scholarships, grants, student loans, and reasonable work study for the child per semester."

Natalie attended a local community college for one year. She did not seek a contribution from Scott for that year. In her second year, she transferred to an Illinois college to obtain an associate of arts degree in dental hygiene. In time, she filed a contempt application alleging Scott refused to contribute to the cost of her attendance at this institution. The district court denied the application after concluding Natalie and her mother failed to give Scott all the statutorily-required

financial information, which the court characterized as a "condition precedent" to Scott's obligation to pay. The court stated Natalie's application was "premature."

Natalie filed a petition seeking a declaration of her parents' obligations to contribute to her postsecondary educational expenses. By this time, she had graduated from college. After taking evidence, the district court applied Iowa Code section 598.21F(2), setting forth the method for determining the cost of a postsecondary education. The court entered judgment against Scott for $7666 and ordered him to pay $4000 toward Natalie's trial attorney fee obligation. Scott's motion for enlarged findings and conclusions was denied and he appealed.

## II. *Postsecondary Education Subsidy*

"[T]he district court 'may' order a postsecondary education subsidy if 'good cause' is shown." *Vaughan*, 812 N.W.2d at 693 (quoting Iowa Code § 598.21F(1)). On a showing of good cause, the court first "determines the cost of postsecondary education based upon 'the cost of attending an in-state public institution for a course of instruction leading to an undergraduate degree.'" *Id.* (quoting Iowa Code § 598.21F(2)(a)). Second, "the court is to determine the amount, if any, the child may reasonably be expected to contribute, considering the child's financial resources, the availability of financial aid such as scholarships, grants, or student loans, and the ability of the child to earn income while attending school." *Id.* at 693-94 (citing Iowa Code § 598.21F(2)(b)). Third, the court deducts "the child's expected contribution from the cost of postsecondary education to arrive at a figure for the 'remaining cost' of the postsecondary education." *Id.* at 694 (citing Iowa Code § 598.21F(c)). Finally,

the court is "to apportion the responsibility of the remaining cost to each parent," not to exceed one-third "of the total cost of the child's postsecondary education" for each parent. *Id.* (citing Iowa Code § 598.21F(c)).

Scott argues the district court lacked good cause to impose a postsecondary education subsidy. Natalie responds that Scott failed to preserve error. We believe her argument is less about error preservation than about the principle of res judicata.

"The doctrine of res judicata provides that a final judgment on the merits of an action precludes the parties from relitigating issues which were or could have been raised in that action." *Gail v. W. Convenience Stores*, 434 N.W.2d 862, 863 (Iowa 1989). The "judgment may be attacked collaterally only if it was entered without jurisdiction." *Id.*

The 2013 ruling was not entered without jurisdiction; it was entered on Scott's request for disposition under the newer statutory provision governing postsecondary education subsidies. As noted, the court found good cause for a posteducation subsidy and authorized an equal division between the parents of the final cost of attendance. The only question left open was the amount of the postsecondary education subsidy. Scott failed to appeal the ruling, and it became a final decision on the question of whether there was good cause to grant a postsecondary education subsidy. Because the good cause question was raised and decided in a prior ruling, Scott is precluded from relitigating the issue.

Scott next contends, "The court erred when it awarded Natalie a subsidy for prior educational expenses which were incurred prior to Natalie's May 2015

petition to determine a subsidy." He relies on *In re Marriage of Neff*, 675 N.W.2d 573 (Iowa 2004), for the proposition that the subsidy "can only be awarded prospectively for expenses incurred after the filing of the petition." In *Neff*, however, "neither [the party] nor her attorney ensured she received *a determination of and order* for a subsidy." 675 N.W.2d at 578. That is not the case here. As soon as Natalie turned eighteen and graduated from high school, Scott sought a determination and an order absolving him of any obligation to pay a postsecondary education subsidy. He obtained an order, albeit not the one he requested. His obligation to pay a subsidy was in place in July 2013, before Natalie began college at the Illinois institution and before she incurred the costs she wished to have subsidized. In the language of *Neff*, the determination and order for a subsidy was made in 2013, well before the filing of Natalie's 2015 petition to obtain a declaration of the amount.

We are left with Scott's challenge to the computation of Natalie's contribution. The following chart summarizes the court's calculations:

| Academic Year | **2013–2014** | **2014–2015** | **Total** |
|---|---|---|---|
| Cost | $18,920 | $25,224 | $44,144 |
| Financial Aid | ($6335) | ($9476) | ($15,811) |
| Natalie's Income | ($5000) | ($8000) | ($13,000) |
| ↓ | | | |
| Cost of College Under Section 598.21F(2)(a): | | | $44,144 |
| Less Child Contribution Under Section 598.21F(2)(b): | | | ($28,811) |
| Balance Under Section 598.21F(2)(c): | | | $15,333 |
| Equal Apportionment Under Section 598.21F(2)(c): | | | **$7666.50** |

Scott takes issue with the district court's income figures for Natalie. *See* Iowa Code § 598.21F(2)(b) (requiring a determination of the child's "ability . . . to earn

income while attending school"). On our de novo review, we agree Natalie earned more income than the district court attributed to her for the 2013-2014 academic year. She testified she worked "[r]oughly twenty hours a week" while she was a full-time student and she earned "[r]oughly" $10,000 as reflected on her tax return. Natalie's mother confirmed this testimony, testifying Natalie "made $10,000 when she worked at Menards for the 2014 year." She also confirmed Natalie began working at Menards in August 2013. While she could not confirm Natalie earned $5000 in 2013, that number flows from Natalie's testimony as to the number of hours she worked. We conclude Natalie earned $10,000 rather than $5000 in the 2013-2014 academic year.

The district court attributed $8000 in annual income to Natalie for the 2014-15 academic year. Again, we believe the appropriate figure was $10,000. Although Natalie's mother testified Natalie worked fewer hours in the spring semester because she was studying for her board exams, there appears to be no dispute that she worked during the 2015 summer term, which was included in the cost calculation for that year. Adjusting Natalie's income, we arrive at the following final apportionment figure.

| Academic Year | 2013–2014 | 2014–2015 | Total |
|---|---|---|---|
| Cost | $18,920 | $25,224 | $44,144 |
| Financial Aid | ($6335) | ($9476) | ($15,811) |
| Natalie's Income | ($10,000) | ($10,000) | ($20,000) |
| ↓ | | | |
| Cost Under Section 598.21F(2)(a): | | | $44,144 |
| Less Child Contribution Under Section 598.21F(2)(b): | | | ($35,811) |
| Remainder Under Section 598.21F(2)(c): | | | $8333 |
| Equal Apportionment Under Section 598.21F(2)(c): | | | **$4166.50** |

We have also considered Scott's argument that Natalie failed to exhaust her financial aid resources. *See* Iowa Code § 598.21F(2)(b). On our de novo review, we disagree with this assertion. Natalie applied for and obtained a federal Pell grant and a subsidized direct loan as well as other scholarship money. She testified she was ineligible for certain loans as well as work-study. We decline to modify the financial aid portion of the calculation.

We are left with Scott's request that we "abandon" the "formula whereby the Court subtracts the resources of the student from the cost to attend an in-state public university to determine a subsidy." He proposes we use "the actual cost of the education at this same institution actually attended by the student." We are not at liberty to alter the plain language of section 598.21F(2)(a), which states courts "*shall* determine the cost of postsecondary education based upon the cost of attending *an in-state public institution.*" (emphasis added). Notably, the district court used the in-state cost figure applicable to the 2013-14 academic year for the 2014-15 academic year as well, even though evidence was introduced that the in-state cost of a public education increased that year.[1] The court's adoption of the slightly lower figure for the 2014-15 year inured to Scott's benefit.

We reverse the judgment in favor of Natalie for $7666 and declare judgment against Scott in favor of Natalie for $4166 based on our modification of Natalie's income.

---

[1] The record contains an exhibit outlining the "cost of attendance" at Iowa State University. That exhibit lists the resident cost for the 2012-13 and 2013-14 academic years as $18,920 and the resident cost for the 2014-15 academic year as $19,030.

### *III.* *Trial & Appellate Attorney Fees*

Scott argues the district court should not have ordered him to pay $4000 toward Natalie's trial attorney fee obligation because he was not in default of a payment obligation.

This court has summarized the instances in which attorney fees are available under the dissolution chapter as follows:

> Iowa Code chapter 598 . . . does allow attorney fee awards (1) for prosecuting or defending an action for dissolution of marriage, including temporary support matters (*see* Iowa Code § 598.11), (2) for bringing an action that results in a determination a party is in default or contempt of a decree (*see id.* § 598.24), and (3) to the prevailing party in a proceeding for modification of an order or decree (*see id.* § 598.36). It contains no provision, however, allowing such an award in a post-decree action seeking a declaratory judgment concerning the parties' rights and responsibilities under the decree.

*In re Marriage of McGinley*, 724 N.W.2d 458, 464 (Iowa Ct. App. 2006); *see also In re Marriage of Trang Nha Nguyen-Wear*, No. 09-1265, 2010 WL 1577403, at *4 (Iowa Ct. App. Apr. 21, 2010). Natalie's action did not fall into any of these categories; it was a petition for declaratory judgment. While she argues the basis for her action was Scott's nonpayment, that fact was not alleged in her petition and, as Scott aptly notes, the precise amount of his payment obligation had not been determined. For these reasons, we conclude the trial attorney fee award was not authorized. We reverse the judgment for costs to remove the $4000 obligation. For the same reasons, we decline the parties' requests to award appellate attorney fees.

*IV.*      *Disposition*

We affirm the declaratory judgment in all respects except that we reverse the judgment amount of $7666 and enter judgment in the amount of $4166. We also reverse the trial attorney fee award and enter judgment for costs in favor of Natalie without the $4000 award of attorney fees.

**AFFIRMED IN PART AND REVERSED IN PART.**